311 F.2d 934
 UNITED STATES of America, Plaintiff-Appellee
v.
George S. CARTER, Defendant-Appellant.
UNITED STATES of America, Plaintiff-Appellee
v.
CITY PRODUCTS CORPORATION, Defendant-Appellant.
UNITED STATES of America, Plaintiff-Appellee
v.
The PILSENER BREWING COMPANY, Defendant-Appellant.
UNITED STATES of America, Plaintiff-Appellee
v.
John J. FELICE, Defendant-Appellant.
 Nos. 14721-14724.
 United States Court of Appeals Sixth Circuit.
 January 9, 1963.
 
 COPYRIGHT MATERIAL OMITTED William F. Snyder and Edwin Knachel, Cleveland, Ohio (Edwin Knachel, William F. Snyder, Marshman, Hornbeck, Hollington, Steadman & McLaughlin, Cleveland, Ohio, on the brief), for defendant-appellant Carter.
 Benjamin C. Boer, Cleveland, Ohio (Benj. C. Boer, Boer, Mierke, McClelland & Caldwell, Cleveland, Ohio, Sidney De Lamar Jackson, Jr., Baker, Hostetler & Patterson, Cleveland, Ohio, on the brief), for defendants-appellants City Products and Pilsener Brewing Co.
 Moses Krislov Cleveland, Ohio, P. D. Maktos, Washington, D. C. (Protagoras Dimitrios Maktos, C. Thomas Zinni, Boston, Mass., on the brief; Harry Weinstock, New York City, of counsel), for defendant-appellant John J. Felice.
 Philip Wilens, Washington, D. C. (Merle M. McCurdy, U. S. Atty., Cleveland, Ohio, John F. Lally, Atty., Criminal Division, Dept. of Justice, Washington, D. C., on the brief), for plaintiff-appellee.
 Before CECIL, Chief Judge, and MILLER and O'SULLIVAN, Circuit Judges.
 O'SULLIVAN, Circuit Judge.
 
 
 1
 This matter involves the appeals of two corporations and two individuals from judgments of conviction for violating § 302(a) and (b) of the Taft-Hartley Act (Title 29, U.S.C.A., § 186(a) and (b)). These sections make it a crime, in industries affecting commerce, for an employer to pay any money to an official of a union representing its employees and for such union official to accept the money. (§ 186(a) (b), Title 29, U.S.C.A.).[1] Exclusions from the Act's applicability are not relevant here.
 
 
 2
 Defendant-appellant Pilsener Brewing Company operated a brewery in Cleveland, Ohio. It was a wholly-owned subsidiary of defendant-appellant City Products Corporation, whose main offices were in Chicago. Defendant-appellant George S. Carter was, at the time of the alleged offense, president and chief executive officer of Pilsener, as well as a member of its board of directors. He was also a vice-president of City Products. Defendant-appellant John J. Felice was, at the time involved, the president and general manager of Teamsters Union Local No. 293, which was the bargaining representative of some of Pilsener's employees. City Products and Pilsener were engaged in an industry affecting commerce. An indictment returned December 16, 1960, in its first count, charged that on April 17, 1956, City Products, Pilsener, and George S. Carter unlawfully, wilfully and knowingly paid $4,500.00 to defendant Felice and, in its second count, that Felice unlawfully, wilfully and knowingly received such money from City Products, Pilsener and George S. Carter, all in violation of the mentioned statute.
 
 
 3
 All defendants waived jury trial and the cause was tried to a United States District Judge sitting in Cleveland, Ohio. The District Judge found all defendants guilty as charged and imposed the following sentences: City Products and Pilsener were fined $10,000.00 and $4,500.00, respectively; George S. Carter was sentenced to 90 days in jail; and John J. Felice was sentenced to 90 days in jail and fined the sum of $4,500.00. The respective appellants assert varying grounds for reversal, but common to all is a claim that the evidence was not sufficient to support a finding of guilt.
 
 
 4
 The factual story of this case, which for the most part is undisputed, is as follows. For some years prior to April, 1956, Carter, as president of Pilsener and Felice as head of the Teamster Local, participated in the labor negotiations between Pilsener and the Teamsters Union. Each signed the resulting bargaining agreements in their respective capacities for Pilsener and Teamsters. While Carter and Felice described their relationship as that of intimate and social friends, their association and acquaintance had beginning in labor negotiations in which they had both participated. Sometime prior to April 17, 1956, Felice arranged to purchase two homes, one for himself and one for his son, who was vice-president of the Teamster local. The price to be paid for these houses was $79,000.00. Felice expected to finance such purchase by a mortgage on the houses being purchased as well as a mortgage on the home then owned by him. In addition to the proceeds of such mortgages, Felice was required to put up some cash. Felice told Carter of his contemplated acquisition of the new homes and said that he would likely need some cash to close the purchase. As testified by Felice, Carter replied, "If you do, see me." Later Felice told Carter that he needed $4,500.00. Carter according to Felice, replied, "Give me a few days. See me at the office." (Pilsener office) Carter's account of these preliminary talks was that in telling Carter of his planned purchase, Felice said that "he might need a few thousand dollars for a short period of time" and "I said `all right' or something to that effect." Carter's further testimony was that when later he was told of the amount needed, he stated to Felice, "All right. Will you give me a couple of days and I will see what I can do about it." We mention these details because they bear on Felice's claim, later discussed, that he did not know the source of the money he took, other than his claimed assumption that it came from Carter's personal funds.
 
 
 5
 Following the above talks, Carter, according to his testimony, called one William Zeidler at the Chicago office of City Products and told Zeidler that Felice wanted to borrow some money and asked whether "we should loan him the money." The next day, again as stated by Carter, Zeidler called him back and said, "Go ahead, make the loan." Zeidler, who was vice-president and treasurer of City Products, as well as secretary and director of Pilsener, denied approving the transaction as claimed by Carter. There was evidence that many transactions by Pilsener were cleared in advance with City Products.
 
 
 6
 On April 16, 1956, Carter advised the controller of Pilsener, one Nero, that Pilsener was making a loan to Felice of $4,000.00. He advised Nero that a company check should not be used to transfer the funds, but that payment was to be made with an official bank check or in cash. Pursuant to such instructions, Nero issued Pilsener's check for $4,000.00 to the Cleveland Trust Company and with it purchased a Cleveland Trust Company "official check" payable to the order of John Felice. On April 17, 1956, Nero delivered the above check and a blank promissory note to Carter who then advised that the amount should be $4,500.00. Five hundred dollars was withdrawn from petty cash and given to Carter. Later that day, Felice arrived at the Pilsener office and was given the $4,000.00 check and $500.00 in cash. He signed a promissory note, which had been prepared by Carter. The note was payable to Carter and called for repayment of $4,500 ninety days after date, with interest at the rate of three percent per annum. Felice said there was no discussion as to when he was to repay the loan or the interest to be charged. He only was aware of the amount of the note and that Carter's name was on it. He said, "Our understanding was that when I got it I would pay him," and that, "I told him that whatever interest he would charge, that I would take care of it."
 
 
 7
 In directing and completing the transaction, Carter told Pilsener's controller, Nero, that the transaction was to be kept "confidential" and that no attempt should be made to collect the note; that he, Carter, "would handle it." The note to Carter was not endorsed by him to Pilsener, but was delivered to its controller, retained by it and entered on the company's books under notes receivable. The $4,500 received by Felice was, as a part of the cash required, delivered to the bank at which his purchase of the two houses was completed. Although carried as a note receivable on the company's books and appearing as past due after its maturity, no effort was ever made to collect it and in 1959 it was charged off. This was done by direction of the then officials of the Pilsener division of City Products, the Pilsener corporation having in June, 1956, been dissolved and its business thereafter carried on as the Pilsener Brewing Division of City Products. Notwithstanding such charge-off, it was not claimed as a bad debt deduction on the income tax return of City Products. Pilsener Brewing Division of City Products will also be referred to herein as Pilsener.
 
 
 8
 Carter left the employ of Pilsener in 1958 and became associated with another brewery in Cleveland. Prior to his leaving Pilsener, and at the request of its auditors, Carter signed a paper reciting that although "not endorsed to the company for bona fide business reasons" the Felice note was the property of Pilsener. In 1959, when his 1956 tax return was under review, Felice advised Internal Revenue agents that the $4,500.00 received by him in 1956 was a loan obtained from Carter. In 1960, however, under advice of counsel, he consented to such amount being added to his 1956 income and paid the resulting tax deficiency. He testified that he argued the point with his attorney, but followed his advice in allowing its inclusion in his 1956 income.
 
 
 9
 In 1960, when first asked by FBI agents about the transaction of 1956, Carter denied giving or making a loan of $4,500.00 to Felice. As a witness before the Grand Jury, he recanted such denial and told of making the payment to Felice, claiming that it was a bona fide loan to Felice from Pilsener. Felice testified that he assumed that the claimed loan was made to him from Carter's own funds. Carter testified that he did not tell Felice that the money came from Pilsener and that Felice never made any inquiry as to its source. There was no direct evidence that Felice knew that the money paid to him came from Pilsener and a finding of such knowledge had to rest upon circumstantial evidence. At no time in the intervening years between April, 1956, and 1960, did Felice do anything about paying the principal or the interest due on the money which he claimed he borrowed. There was no evidence that the interest payable on the note was ever reported as accrued income by Pilsener. Felice testified that on one occasion, the time and place of which he could not recall, he mentioned to Carter that he "would like to make some arrangement to pay back that money" and that Carter replied, "What are you worrying about? Have I asked you for it?" Carter could recollect no such conversation.
 
 
 10
 Aside from this last mentioned conversation, neither Carter, Felice, nor anyone connected with City Products or Pilsener gave any explanation as to why no effort to collect or offer to repay this alleged loan was ever made.
 
 
 11
 In the District Judge's opinion finding all defendants guilty, he found as a factual conclusion that the payment of $4,500.00 to Felice was not a loan, stating.
 
 
 12
 "That the defendants from the very beginning of this transaction did not look upon or intend this transaction to be a loan; that Felice never intended to repay the money received or any interest thereon; and that the defendants did not expect to be repaid."
 
 
 13
 The District Judge expressed his further opinion that even if the transaction were assumed to be a loan "the transaction constituted the payment and receipt of a thing of value and a violation of Section 186, Title 29, USCA."
 
 
 14
 We will discuss such of the asserted grounds for reversal as we consider require discussion under the subject headings and in the order following:
 
 
 15
 1. Would a bona fide loan violate the statute? The government asserts that even if the involved transaction was, in truth, a loan, the statute was violated. We cannot agree. The conduct proscribed by such statute (§ 302, Labor-Management Relations Act of 1947, § 186 U.S.C.A. Title 29) is for an employer "to pay or deliver, or to agree to pay or deliver, any money or other thing of value" to a representative of its employees' union and for such a union representative "to receive or accept, or to agree to receive or accept, from the employer * * * any money or other thing of value." Were we here construing a statute relating to civil rights or remedies, it might be permissible to spend time considering whether, by construction, the word "loan" could be added to actual words employed. Such a meaning, however, does not emerge with the clarity which should be found in criminal statutes. Winters v. New York, 333 U.S. 507, 515, 68 S.Ct. 665, 670, 92 L.Ed. 840, 849. We think it sufficient to refer to the language of Judge Martin, writing for this court in North American Van Lines, Inc. v. United States, 243 F.2d 693, 696, 697 (C.A.6, 1957). Citing decisions of the United States Supreme Court, we there said "Impossible standards of specificity are not required, but the language of the statute (charging a criminal offense) must convey sufficiently definite warning as to the proscribed conduct when measured by common understanding and practices." The statute here involved created a new offense not theretofore known to statute or common law. The coverage of such a statute may not be extended beyond what clearly appears from its explicit language. Connally v. General Construction Co., 269 U.S. 385, 391, 46 S.Ct. 126, 70 L.Ed. 322; McBoyle v. United States, 283 U.S. 25, 27, 51 S.Ct. 340, 75 L.Ed. 816. We do not find, in the language employed, a Congressional intent to make a bona fide loan between parties described in the statute a crime. Congress, itself, recognized that it had not clearly expressed such intent when, in 1959, it amended the involved sections of the Act to specifically cover loans and lending (Sec. 505 of the Labor-Management Reporting and Disclosure Act of 1959). Such amendment was Congressional recognition that loans had not theretofore been covered. United States v. Chase, 135 U.S. 255, 262, 10 S.Ct. 756, 34 L.Ed. 117; United States v. Curtis, 107 U.S. 671, 676, 2 S.Ct. 507. 27 L.Ed. 534; Fisher Flouring Mills Co v. United States, 270 F.2d 27, 28 (C.A.9, 1959).
 
 
 16
 Unless there was evidence from which the trier of the facts, the District Judge, could find, beyond a reasonable doubt, that the clothing of the alleged loan was a sham to hide an outright payment, the convictions must be set aside.
 
 
 17
 2. Was the alleged loan, in true fact, an outright payment? We have, in some detail, recited the facts disclosed by the evidence because we believe such recital provides the answer to the question raised. Proof of criminal conduct may be made out by circumstantial evidence. United States v. Comer, 288 F.2d 174, 175 (C.A.6, 1961); Holland v. United States, 348 U.S. 121, 139-140, 75 S.Ct. 127, 99 L.Ed. 150. While the circumstantial proof, with the inferences drawn therefrom, must be sufficient to warrant a finding of guilt beyond a reasonable doubt, such proof need not, as claimed by appellant, be such as to exclude every reasonable hypothesis other than that of guilt. Holland v. United States, supra, p. 139, 75 S.Ct. 137; United States v. Thomas, 6 Cir., 303 F.2d 561, 562, 563. In determining whether the evidence was sufficient to withstand a motion for acquittal, the evidence must be viewed in the light most favorable to the prosecution. This rule applies to a case tried to a District Judge as well as to a case tried to a jury. Battjes v. United States, 172 F.2d 1, 5 (C.A.6, 1949).
 
 
 18
 While there was some disagreement between the witnesses on some details, the facts which we recite could be found to be true. These facts, plus justifiable inferences drawn therefrom, were, in our opinion, sufficient to justify the District Judge's finding that, as a matter of fact and beyond a reasonable doubt, the alleged loan was in reality an outright payment to Felice, known and intended to be such by the defendants Pilsener Brewing Co., Carter and Felice. This was so at the close of the government's case, as well as at the close of proofs. The motions for acquittal, made at these times by defendants Carter, Felice and Pilsener Brewing Company, on the ground that the government's proof was insufficient to permit a finding that the payment to Felice was not a loan, were properly denied. We exclude defendant City Products from our holding in this regard because, for reasons later discussed, we find it necessary to reverse the conviction of that corporation.
 
 
 19
 3. Guilt of City Products Corporation. City Products owned all of the stock of its subsidiary, Pilsener Brewing Company. It had no employees, however, who were members of Teamsters Local 239. The indictment, in effect, charged that on or about April 17, 1956, City Products, an employer of employees, paid the sum of $4,500.00 to a union representative of "the aforesaid employees." No such case was proved against City Products. City Products had no employees who could be said to be "the aforesaid employees" described in the indictment. City Products acquired the assets of Pilsener Brewing at the time the latter was merged with the parent. Such acquisition would not make it chargeable, as a principal, for a crime previously committed by Pilsener or Carter. Neither does the conduct of City Products subsequent to April 17, 1956, in failing to press for repayment of the spurious loan made to Felice, or its act in charging off the Felice note, render it guilty of the charged offense. Whether such conduct would render City Products guilty of being an accessory after the fact to Carter, Felice and Pilsener, is not before us. No such charge under Section 3, Title 18, U.S.C.A., was made in the indictment. The government urges, however, that we should hold that City Products was an employer of Pilsener's union member employees, citing our decision in N. L. R. B. v. Swift & Co., 127 F.2d 30 (C.A.6, 1942) and other cases involving the enforcement of various provisions of the National Labor Relations Act. We find none of these cases apposite here.
 
 
 20
 It is further argued that because of testimony by Carter that he got the permission of Zeidler, secretary of City Products, to make the alleged loan to Felice and because the District Judge, despite Zeidler's denial, found as a fact that Carter "was authorized and directed by William Zeidler, a proper official of the City Products, to engage in the transaction here in dispute, prior to the delivery of the money to Felice," City Products is guilty as a principal. It is clear, however, that the only evidence of Zeidler's participation in the events occurring prior to and at the time of the alleged offense was his consent to Pilsener Brewing Company making a loan to Felice. We have held that a bona fide loan to a union representative was not proscribed by the statute, as it read in 1956. We do not believe the evidence would justify an inference that Zeidler, at the time he gave his consent, knew that such loan was but a cover for an illegal payment to Felice.
 
 
 21
 City Products' motions for acquittal should have been granted. This disposition of City Products' appeal makes it unnecessary to discuss other errors assigned by it.
 
 
 22
 4. Criminal responsibility of the corporation, Pilsener Brewing Company. The indictment was brought under Section 186(d), Title 29, U.S.C.A., which provides that "any person who wilfully violates any of the provisions of this Section, etc., * * *" shall be guilty of a crime. Defendant Pilsener urges that under the facts of this case it, a corporation, cannot be held criminally responsible for the single criminal act of its president, George S. Carter. We will not here enter into extended discussion of the interesting subject of criminal responsibility of corporations. While concise and dogmatic rules cannot be distilled from the decisions, the uncertainties that long attended this subject have been cleared away to the extent that in this day we know that a corporation, through the conduct of its agents and employees, may be convicted of a crime, including a crime involving knowledge and wilfulness. New York Central & Hudson River Railroad Company v. United States, 212 U.S. 481, 29 S.Ct. 304, 53 L.Ed. 613; United States v. Union Supply Company, 215 U.S. 50, 55, 30 S.Ct. 15, 54 L.Ed. 87; United States v. Illinois Central R. Co., 303 U.S. 239, 244, 58 S.Ct. 533, 82 L.Ed. 773; United States v. Nearing et al., 252 F. 223, 231 (S.D. N.Y.1918); Continental Baking Company v. United States, 281 F.2d 137, 149, 150, 151 (C.A.6, 1960); 10 Fletcher Cyc. Corporations, § 4944, p. 873 (1961 Edition). It is essential, however, to corporate guilt, that its officer's or agent's illegal conduct be related to and done within the course of his employment and have some connection with the furtherance of the business of such corporation. Writing for this court in Continental Baking Company v. United States, supra, Judge Weick said:
 
 
 23
 "This question of corporate responsibility for the acts of an agent is a most troublesome one. It involves issues of `authority' and `acts within the scope of employment.' The language of the decided cases varies in many instances, and seemingly different theories of corporate responsibilities can be rationalized. However, when the decisions are viewed as an entirety, a common denominator appears.
 
 
 24
 "There is an officer or agent of a corporation with broad express authority, generally holding a position of some responsibility, who performs a criminal act related to the corporate principal's business. Under such circumstances, the courts have held that so long as the criminal act is directly related to the performance of the duties which the officer or agent has the broad authority to perform, the corporate principal is liable for the criminal act also, and must be deemed to have `authorized' the criminal act." (citing cases) 281 F.2d 149.
 
 
 25
 In the case at bar, we believe that the authority of George S. Carter and the activity in which he was engaged at the time of the offense involved, brought criminal responsibility to the corporation of which he was president. As president, he was Pilsener's chief executive officer with the general supervisory authority that attends such office. Aside from his implied authority as president, he was, in fact, the one who ran the company. He was described by the company's controller as the one who issued the orders and directions and was "the sole official, boss of the Pilsener Brewing Company." While Pilsener's labor negotiations were carried on through a brewer's association, Carter participated in such negotiations and customarily signed collective bargaining agreements with the Teamsters union for Pilsener. It is apparent that his association with Felice grew out of such labor negotiations. In today's economy, it is a large and important part of the business of any employer to carry on negotiations with a union representing its employees. We think that it can be fairly inferred that in acceding to Felice's request for money and providing such money out of the corporation's funds, Carter, however illegal and misguided his actions were, did so in the course of his employment with, and in furtherance of the business interests of, his company. Egan v. United States, 137 F.2d 369, 380 (C.A.8, 1943); Mininsohn v. United States, 101 F.2d 477, 478 (C.A.3, 1939). Proof of an actual benefit to the corporation in such circumstances is not essential to its responsibility. Old Monastery Co. v. United States, 147 F.2d 905, 908 (C.A.4, 1945); cert. denied, 326 U.S. 734, 66 S.Ct. 44, 90 L.Ed. 437; United States v. Empire Packing Co., 174 F.2d 16, 20 (C.A.7, 1949). In the recent case of Standard Oil Company of Texas v. United States, 307 F.2d 120 (C.A.5, 1962), a corporate defendant's conviction was reversed because there the illegal conduct of its agents was shown to be solely for the personal gain of such agents, directly contrary to the interests of their corporate employers. Such is not the case before us.
 
 
 26
 We are of the opinion, too, that Carter's knowledge and wilfulness must be charged to Pilsener. The corporate person can only act and know through its officers, and the guilty knowledge and wilful conduct of its chief executive officer will be charged to the corporate person. United States v. Armour & Co., 168 F.2d 342, 344 (C.A.3, 1948); United States v. George F. Fish, Inc., 154 F.2d 798, 801 (C.A.2, 1946); CIT Corporation v. United States, 150 F.2d 85, 89, 90 (C.A.9, 1945); Zito v. United States, 64 F.2d 772, 775 (C.A.7, 1933). In Magnolia Motor & Logging Company v. United States, 264 F.2d 950, 953 (C.A.9, 1959), the wilful and knowing criminal act of a corporation's president was held imputable to the corporation.
 
 
 27
 We have considered the authorities relied upon by appellant Pilsener and are of the opinion that they are neither apposite nor controlling.
 
 
 28
 5. Was there a wilful violation of the statute? Under Subsection (d) of § 302 of the Act (§ 186(d) U.S. C.A. Title 29) wilfulness is a necessary ingredient of the crime charged. Felice said that he knew that the Taft-Hartley Act forbade his acceptance of money from an employer whose employees were members of the union of which he was president. Claiming that what he did was but a borrowing, he disclaims wilfulness. The District Judge found that what was done was not a loan, but was an outright payment and was so understood. Felice knew what he was doing and so his wilfulness is apparent. Carter disclaimed any knowledge of the relevant proscription of the Act in question. We do not think it necessary to a finding of wilfulness that it be shown that the one so charged had read the statute which makes his conduct illegal. As stated by Judge Learned Hand in American Surety Co. of New York v. Sullivan, 7 F.2d 605, 606 (C.A.2, 1925): "The word `willful,' even in criminal statutes, means no more than that the person charged with the duty knows what he is doing. It does not mean that, in addition, he must suppose that he is breaking the law." Such language was quoted with approval by Judge Allen of this court in Schmeller v. United States, 143 F.2d 544, 553 (C.A. 6, 1944). In United States v. Ryan, 232 F.2d 481, the Second Circuit was considering, on remand from the United States Supreme Court, (350 U.S. 299, 76 S.Ct. 400, 100 L.Ed. 335) the meaning of "wilfulness" as that word is used in the specific statute here involved (§ 186(d) U.S.C.A. Title 29). A payment by a corporate officer to the president of a union, of which the corporation employees were members, was involved. The court upheld the conviction of the union official by a District Judge who had, on the question of wilfulness, said, "In my opinion a wilful violation of section 186(b) is proved if it is shown that a `representative of any employees who are employed in an industry affecting commerce' received or accepted money from the employer of such employees with knowledge (1) that he was receiving or accepting money, and (2) that the person who was giving him the money was an employer of employees that he represented." United States v. Ryan, 128 F.Supp. 128, 133 (S.D.N.Y.1955).
 
 
 29
 Felice argues that he did not know that the money came from Pilsener and therefore he did not wilfully receive it from an employer of members of his union. Aside from the fact that he knew that Carter, as its president, was the agent of Pilsener, (§ 2 of the Act provides that the term "employer" includes any person acting as an agent of the employer), we are satisfied that the District Judge, as trier of the facts, could find from the evidence that Felice knew from whence came his money. When he asked Carter for it, Carter replied, "Give me a few days, see me at the office." It was at the Pilsener office that Felice received the bank check (which obscured the source of the money) and the cash. Just why Carter would, from his own funds, give Felice $4,500 is difficult to understand. The District Judge could find that Felice knew what was going on. Any viewer of the conduct of Carter and Felice would, indeed, be on plausible grounds in believing that both of them knew that they were "about some shady business" in this transaction.
 
 
 30
 We have stated above that the wilfulness of Carter is properly imputable to the Pilsener corporation and, therefore, hold that there was sufficient evidence from which wilfulness of the corporation could be found.
 
 
 31
 6. Did the District Judge err in denying Carter a separate trial? Carter's motion for a separate trial was denied. He claims to have been prejudiced thereby. The granting or denial of such a motion, made pursuant to Rule 14, F.R.Cr.P. is within the discretion of the District Judge. In the absence of an affirmative showing of abuse of such discretion, a refusal of severance is not assignable as error. Stilson v. United States, 250 U.S. 583, 40 S.Ct. 28, 63 L.Ed. 1154; Bullock v. United States, 265 F.2d 683, 689 (C.A.6, 1959). We find no abuse of discretion in this regard.
 
 
 32
 7. Constitutionality of § 302(a) of the Act. Defendant Felice now asserts that subsection (a) of § 302 (§ 186(a) U.S.C.A. Title 29) is unconstitutional. We are not sure that we fully understand the basis of such claim. His brief on this point says:
 
 
 33
 "The Congressional intention of Sections 302(a) and 302(b), prior to the 1959 amendment, was clearly to prohibit payments by an employer to a union representative. It was not intended that the prohibition reach sources other than the employer."
 
 
 34
 Such statement does not expose any constitutional infirmity, but rather confirms that the statute makes clear the conduct interdicted thereby. We read Felice's argument which follows the above quoted statement as a contention that the statute's constitutional infirmity is its alleged failure to adequately make known what persons would be considered agents or representatives of an employer. We find no such vice in the statute. In today's industry, the majority of employers engaged in commerce are corporations who can act only through individuals who are their agents. Section 2 of the Act (§ 152 U.S.C.A. Title 29) provides that "the term `employer' includes any person acting as an agent of an employer, directly or indirectly." It appears to us that a union representative would have little difficulty in recognizing the president of a corporation, whose employees are members of his union, as the corporation's agent. In Ryan v. United States, 350 U.S. 299, 76 S.Ct. 400, 100 L.Ed. 335, the Supreme Court held that the president of a union came within the term "representative of any employees." We think that, conversely, the president and labor negotiator of a corporate employer would easily be known to a union representative as one from whom he should not accept the forbidden payment of money. Upon the remand to it of the Ryan case, the Second Circuit held that the statute here involved was not so vague in its identification of a representative of employees as to be unconstitutional. United States v. Ryan, 232 F.2d 481, 482, 483 (C.A.2, 1956). The statute is not unconstitutional.
 
 
 35
 8. The District Judge's ruling on evidence. We have considered errors claimed to have been made by the District Judge in admitting some evidence and exhibits offered by the government. For the most part, the admission of such evidence was within the discretion of the District Judge. There may have been one or two places where defense objections should have been sustained, but our consideration thereof persuades us that no prejudice came to the defendants by such rulings. None of the evidence so admitted established any essential links to the proof of the crime involved; it was but cumulative and corroborative. We hold that no such rulings affected any substantial rights of the defendants. (Rule 52(a) F.R.Cr.P.)
 
 
 36
 Complaint is further made that during the presentation of the government's case the District Judge reserved his rulings on various objections made by defense counsel. A typical instance of such situation was where a ruling was reserved as to whether evidence received would be admitted as to all defendants, or only one of them. At the close of the government's case, the District Judge was asked to make rulings on such objections. He did not do so. On this appeal, however, counsel do not point to any instance where such failure to rule prejudiced any defendant. We have held that there was sufficient admissible evidence to sustain the convictions which we affirm. We find no reversible error in the District Judge's rulings, or failure to rule, on evidentiary matters. This disposition of appellants' complaint in the above regard does not indicate our approval of a trial judge's practice of repeated postponing of decisions on evidentiary matters by reserving a ruling thereon. (Not the situation here.) The burden of trial counsel should not be made heavier by such practice. Counsel should, with reasonable promptness, be informed by the judge's ruling as to what further proof may be needed to sustain his case; where he represents a defendant he should not be required to go forward with his own proofs or attack the sufficiency of his opponent's case until he knows just what case his opponent has made. There may arise exigencies providing exceptions to the foregoing, but it is a good general rule to be followed in jury and non-jury cases, (see discussion Vol. 1, Wigmore § 19, p. 348).
 
 
 37
 9. Enforcement of judgment against Pilsener. We do not think any problem of enforcement of the fine against Pilsener is presented by the fact that its indictment, conviction and sentence came after it had been merged into its parent, City Products. Both City Products and Pilsener were Ohio corporations. By virtue of § 1701.88, Page's Ohio Revised Code, Supp., and the holding of the United States Supreme Court in Melrose Distillers, Inc. v. United States, 359 U.S. 271, 79 S.Ct. 763, 3 L.Ed.2d 800, a method of enforcing the sentence against Pilsener may be found.
 
 
 38
 The judgments against Pilsener Brewing Company, George S. Carter and John J. Felice are affirmed; the judgment of conviction of City Products Corporation is reversed with direction to enter a judgment of acquittal.
 
 
 
 Notes:
 
 
 [1]
 "(a) It shall be unlawful for any employer to pay or deliver, or to agree to pay or deliver, any money or other thing of value to any representative of any of his employees who are employed in an industry affecting commerce
 "(b) It shall be unlawful for any representative of any employees who are employed in an industry affecting commerce to receive or accept, or to agree to receive or accept, from the employer of such employees any money or other thing of value."