UNITED STATES of America, Appellee,

v.

Harold ROTH and Herbert S. Sternberg, Defendants-Appellants.

No. 136, Docket 28375.

United States Court of Appeals
Second Circuit.

Argued Dec. 10, 1963.

Decided June 5, 1964.

Arthur N. Field, New York City, for appellant Harold Roth; Sidney A. Florea, New York City, for appellant Herbert S. Sternberg (Irving Brown, New York City, of counsel).

Thomas Day Edwards, Asst. U. S. Atty., (Robert M. Morgenthau, U. S. Atty., for the Southern Dist. of New York, Andrew T. McEvoy, Jr., Robert J. Geniesse, Asst. U. S. Attys., of counsel), for the United States.

Before MOORE,* SMITH and HAYS, Circuit Judges.

MOORE, Circuit Judge:

These are appeals by defendants Roth and Sternberg from convictions in the Southern District of New York, for violations of section 302 of the Labor Management Relations Act of 1947, 29 U.S. C.A. § 186(a), which prohibits an employer from paying or delivering "any money or other thing of value" to a representative of his employees. Roth was sentenced to six months in jail and fined $10,000; Sternberg was sentenced to two months in jail and fined $4,000. At a separate trial, Milton Holt, the recipient of the "thing of value," was found guilty by a jury of violating § 186(b),

* This appeal was argued before a panel composed of Judges Clark, Smith and Hays. Judge Clark died before any opin- ion had been prepared, and thereafter Judge Moore was substituted.

which prohibits the receipt of anything of value from an employer by an employee representative. Holt was sentenced to six months and fined $10,000. Execution was suspended on all three sentences.

There is no real dispute about the facts. In 1957 Roth was president of National Vending Corp. and Continental Vending Machine Corp. and Sternberg was a high ranking employee of these corporations (Sternberg signed the collective bargaining agreement for the corporation). Holt was the secretary-treasurer of the local union representing the employees. Sternberg was also the vice president of Valley Commercial Corp., a private finance company in which Roth was the major stockholder. In October of 1957 Sternberg, with Roth's approval, called Abrams of Adams Associates, another private finance company, and asked Adams to do them a personal favor by loaning Holt $30,000 without collateral or interest. Valley Commercial sent Adams Associates the funds with which to make the loan. Adams Associates thereupon made the loan and took Holt's note, endorsed by his wife. Eight months later, Holt repaid the loan.

In April of 1959 Sternberg again requested Adams Associates to make a short term loan ($54,600—two days) to Holt without interest or collateral. This pattern was repeated in May of 1959 ($12,000—18 days). All the loans were repaid, and all were backstopped by a Valley Commercial check except for the May 1959 loan. These three loans constitute, respectively, the subject matter of counts 1, 3 and 5 on which Roth and Sternberg were convicted.

At the time of these transactions, the statute involved, 29 U.S.C.A. § 186, 61 Stat. 157, read:

*"Restrictions on payments to employee representatives; exceptions; penalties; jurisdiction; effective date; exception of certain trust funds*

"(a) It shall be unlawful for any employer to pay or deliver, or to agree to pay or deliver, any money or other thing of value to any representative of any of his employees who are employed in an industry affecting commerce.

"(b) It shall be unlawful for any representative of any employees who are employed in an industry affecting commerce to receive or accept, or to agree to receive or accept, from the employer of such employees any money or other thing of value."

On September 14, 1959, this section was amended, 29 U.S.C.A. § 186, 73 Stat. 537, to read:

*"Restrictions on payments and loans to employee representatives, labor organizations, officers and employees of labor organizations, and to employees * * * ; exceptions; penalties, jurisdiction; effective date; exception of certain trust funds*

"(a) It shall be unlawful for any employer or association of employers or any person who acts as a labor relations expert, adviser, or consultant to an employer or who acts in the interest of an employer to pay, lend, or deliver, or agree to pay, lend, or deliver, any money or other thing of value—

"(1) to any representative of any of his employees who are employed in an industry affecting commerce * * *

"(b) (1) It shall be unlawful for any person to request, demand, receive, or accept, or agree to receive or accept any payment, loan, or delivery of any money or other thing of value prohibited by subsection (a)."

Appellants argue that the statute prior to the 1959 amendment did not proscribe a loan. They say that their conclusion is buttressed by Congressional recognition in 1959 that loans were not included in section 186; hence, the addition of the word "lend" in the amendment. Congressional history is relied upon by appellants and Government alike in support of their respective contentions.

Quite apart from the amendment, appellants contend that a statute creating a crime must give fair warning of the precise acts thereby made criminal. Thus, they argue, section 186 did not do so because the words "pay or deliver any money or other thing of value" do not reasonably include the making of a loan. The first question, therefore, is: was each of these interest-free loans without collateral a "thing of value"? Little purpose will be served by placing these words on the dissecting table. Nor will abstract discussion as to: is a loan a thing?, be helpful. Value is usually set by the desire to have the "thing" and depends upon the individual and the circumstances. We hold that a loan may reasonably be included within the wording of the statute and that the Congress so intended. Moreover, an even narrower construction was adopted by the court in its charge to the jury.

The court charged in part on the subject of "this element of thing of value as required under the statute and as meant under the statute":

"To put this another way, the government maintains that all the circumstances, all the evidence, prove beyond a reasonable doubt that the defendants intended to confer a benefit or thing of value upon Milton Holt in the form of these not insubstantial sums of money to be used by him free of interest and without collateral, whereas, defendants urge that there was no particular one-sided benefit or thing of value under the circumstances and that these were legitimate, normal loans paid or caused to be paid by them to Holt in this capacity as principals of a finance company and that they knew, as such principals, that Holt was a good credit risk.

"In determining whether or not there was a thing of monetary benefit or a thing of value conferred upon Holt, you can and you must consider all the surrounding circumstances as indicated by the evidence.

The court then made specific reference to such factors as the terms of the loan, interest, duration, collateral or absence thereof, Holt's purpose in obtaining the loan, the use to which he put the money and all other circumstances perceived from the evidence as pertinent. By their verdict of guilty, the jury found that the loans were things of value. This finding can be disregarded only if we hold as a matter of law that loans were not within the contemplation of section 186.

The purpose of the statute was "to prevent employers from tampering with the loyalty of union officials, and disloyal union officials from levying tribute upon employers." (United States v. Ryan, 225 F.2d 417, 426, 2 Cir.1955.) Congress wished to outlaw tampering with the loyalty of union officials by forbidding the delivery to any such official of that which might "turn the edge of his allegiance" (225 F.2d 417, 426). Recognizing that favors may be conferred in many ways under many circumstances, Congress gave the broadest possible scope to the statute by adding to the word "money" the words "or other thing of value." See United States v. Ryan, 350 U.S. 299, 300, 76 S.Ct. 400, 100 L.Ed. 335 (1956). Whether the "thing" comes within the intendment of the statute is not always easy of resolution. The instructions here were, if anything, too favorable to defendants, and the issue was properly resolved by the jury. The court charged that the jury must find more than a loan in order to find guilt, that it must find that a substantial monetary benefit or thing of value must be conferred to constitute a violation on any count of this indictment.

The 1959 amendment made a significant change in that it sought to prevent anyone acting on behalf of an employer from doing that which the employer itself was forbidden to do. In addition, the word "lend" was inserted so that the section would read "pay, lend, or deliver." As might be expected, the age-old arguments are advanced as to the effect of this amendment. The Government argues that a loan was definitely embraced with-

in the former section and that "lend" merely made explicit that which was already forbidden. Appellants, on the other hand, assert with substantial support from legislative history and decisional authority that "lend" had to be added to remedy a deficiency or loophole in the former section. Furthermore, they say, even assuming that this were done only for purposes of clarification, this very need conclusively establishes that the previous section did not give to appellants that clear and unequivocal warning of the criminality of the acts therein proscribed.

In United States v. Carter, 311 F.2d 934, 6 Cir., 1963, the court, dealing with section 186 of the 1947 Act, posed two questions: (1) "Would a bona fide loan violate the statute?" and (2) "Was the alleged loan, in true fact, an outright payment?" In its actual decision, the court found that the transaction was not a loan but an outright payment; hence, it affirmed the conviction. Those so minded can well argue that the first question became academic because there was no bona fide loan; therefore, any comments by the court could only be dicta. Technically, this may be true but comments of a court are never to be lightly disregarded. To call them dicta is frequently a polite subterfuge for expressing strong disagreement. The court in Carter said that it did not find in section 186 "a Congressional intent to make a bona fide loan between parties described in the statute a crime." As to the effect of the 1959 amendment it reasoned that "[s]uch amendment was Congressional recognition that loans had not theretofore been covered." (311 F.2d at 940.) The qualification in the question that the loan be "bona fide" may justify a conclusion that a loan not "bona fide" would be in violation. If this be so, Carter is no deterrent to the adoption of a principle that the question whether a loan conferred on a recipient is a substantial monetary benefit or thing of value should be resolved as a factual matter by court or jury. If Carter holds that any loan is exempt from the penalties of the statute, then disagreement is in order.

■■ The coverage of the 1947 statute must be ascertained from its own terms precisely as if no amendment were ever to be drafted. Only if a "thing of value" could not include a loan delivered under such circumstances that it had "value" would a court be warranted in ruling as a matter of law that no violation of the statute had occurred. But it may be argued that a five-dollar Christmas tie is a "thing of value" and a Christmas present hopefully is to create good will in the recipient towards the donor. Countless hypothetical cases can be put, each on its facts approaching that evanescent borderline between the proper and the improper. No calculating machine has yet been invented to make these determinations with certainty. In the meantime the courts must rely upon the less mechanical judgment and common sense which under the present system is, and of necessity must be, lodged in judges and juries. The trial court exercised its judgment correctly in submitting the question to the jury; the jury in turn answered the question. Its verdict must be accepted.

■ The claimed variance, namely, between the indictment which read "a thing of value, to wit, money" and the proof of loans of the identical amounts does not create reversible error. The defendants knew and had fair notice of what they were charged with. See United States v. Burgos, 269 F.2d 763, 767, 2 Cir., 1959, cert. denied, 362 U.S. 942, 80 S.Ct. 808, 4 L.Ed.2d 771 (1960).

Affirmed.

HAYS, Circuit Judge (dissenting):

The fact that the majority finds it necessary to argue the issue in extenso demonstrates, in itself, that Section 186 as it formerly read failed to prohibit loans with that clarity which is required of criminal statutes.