[PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT
_____

No. 11-10594
_____

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
JAN 18, 2012
JOHN LEY
CLERK

D.C. Docket No. 0:08-cv-61766-PAS


MARTIN MULHALL,

Plaintiff - Appellant,

versus

UNITE HERE LOCAL 355,
HOLLYWOOD GREYHOUND TRACK, INC.,
doing business as Mardi Gras Gaming,

Defendants - Appellees.


_____

Appeal from the United States District Court
for the Southern District of Florida
_____


(January 18, 2012)

Before WILSON and FAY, Circuit Judges, and RESTANI,[*] Judge.

WILSON, Circuit Judge:

On this appeal, we decide whether organizing assistance offered by an employer to a labor union can be a "thing of value" contemplated under § 302 of the Labor Management Relations Act ("LMRA"), 29 U.S.C. § 186. Section 302 makes it unlawful for an employer to give or for a union to receive any "thing of value," subject to limited exceptions. We hold that organizing assistance can be a thing of value that, if demanded or given as payment, could constitute a violation of § 302. Because the dismissal of Martin Mulhall's complaint was based on a contrary conclusion, we reverse.

## I. BACKGROUND [1]

Hollywood Greyhound Track, Inc., d/b/a Mardi Gras Gaming ("Mardi Gras"), and UNITE HERE Local 355 ("Unite"), a labor union, entered into a memorandum of agreement ("Agreement") on August 23, 2004. In the Agreement, Mardi Gras promised to (1) provide union representatives access to non-public work premises to organize employees during non-work hours; (2)

---

[*]Honorable Jane A. Restani, Judge, United States Court of International Trade, sitting by designation.

[1]We present the facts in the light most favorable to the plaintiff and accept all factual allegations as true in reviewing Federal Rule of Civil Procedure 12(b)(6) dismissals. *Hill v. White*, 321 F.3d 1334, 1335 (11th Cir. 2003) (per curiam).

provide the union a list of employees, their job classifications, departments, and addresses; and (3) remain neutral to the unionization of employees. In return, Unite promised to lend financial support to a ballot initiative regarding casino gaming. Ultimately, Unite spent more than $100,000 campaigning for the ballot initiative. Additionally, if recognized as the exclusive bargaining agent for Mardi Gras's employees, Unite promised to refrain from picketing, boycotting, striking, or undertaking other economic activity against Mardi Gras.

Mulhall is a Mardi Gras employee opposed to being unionized. His complaint seeks to enjoin enforcement of the Agreement, contending that it violated § 302. The district court dismissed the complaint for failure to state a claim because it found that the assistance promised in the Agreement cannot constitute a "thing of value" under § 302.

This is not the first time this case has been before us on appeal. In a previous appeal addressing Mulhall's standing to bring the case, we stated that Mulhall "adequately alleged that the organizing assistance promised by Mardi Gras in the [Agreement] is valuable, and indeed essential, to Unite's effort to gain recognition." *Mulhall v. UNITE HERE Local 355*, 618 F.3d 1279, 1288 (11th Cir. 2010).

## II. STANDARD OF REVIEW

An order granting a motion to dismiss for failure to state a claim is subject to de novo review. *See Redland Co. v. Bank of Am. Corp.*, 568 F.3d 1232, 1234 (11th Cir. 2009) (per curiam).

## III. DISCUSSION

Congress enacted the LMRA, commonly known as the Taft-Hartley Act, to curb abuses "inimical to the integrity of the collective bargaining process." *Arroyo v. United States*, 359 U.S. 419, 425, 79 S. Ct. 864, 868 (1959). With certain exceptions, § 302 makes it unlawful for

> any employer . . . to pay, lend, or deliver, any money or other thing of value . . . to any labor organization, or any officer or employee thereof, which represents, seeks to represent, or would admit to membership, any of the employees of such employer . . . .

29 U.S.C. § 186(a)(2). Additionally, a person cannot request or demand a payment, loan, or delivery of money or other thing of value. *Id.* at § 186(b)(1). As the Ninth Circuit explained, "The dominant purpose of § 302 is to prevent employers from tampering with the loyalty of union officials and to prevent union officials from extorting tribute from employers." *Turner v. Local Union No. 302, Int'l Bhd. of Teamsters*, 604 F.2d 1219, 1227 (9th Cir. 1979).

In the context of § 302, the Eleventh Circuit has not addressed the meaning of the phrase "thing of value," but it has commented on the phrase as it is used in

4

various other criminal statutes. In *United States v. Nilsen*, the Court stated, "Congress' frequent use of 'thing of value' in various criminal statutes has evolved the phrase into a term of art which the courts generally construe to envelop[] both tangibles and intangibles." 967 F.2d 539, 542 (11th Cir. 1992) (per curiam) (discussing 18 U.S.C. § 876, a statute criminalizing the making of a threatening letter with the intent to extort a thing of value). Reasoning that "monetary worth is not the sole measure of value," we held the expected testimony of a key government witness is a thing of value. *Id.* at 543.

The Fourth and Third Circuits have addressed challenges to neutrality and cooperation agreements under § 302, and both courts found the assistance was not a thing of value. *Adcock v. Freightliner LLC*, 550 F.3d 369, 374 (4th Cir. 2008); *Hotel Emps. & Rest. Emps. Union, Local 57 v. Sage Hospitality Res., LLC*, 390 F.3d 206, 219 (3d Cir. 2004). In *Adcock*, the plaintiff challenged an agreement in which the employer (1) granted the union access to private property, (2) promised neutrality during organizing campaigns, and (3) required some employees to attend union presentations on paid company time. 550 F.3d at 371. The Fourth Circuit concluded the organizing assistance had no ascertainable value, and therefore the plaintiff had failed to state a § 302 claim. *Id.* at 374. The court explained that the reading of § 302 was consistent with the purpose of the statute

5

because the agreement could not be construed as a bribe or corrupt practice. *Id.* at 375.

The Third Circuit reviewed a neutrality agreement and held that, regardless of whether the agreement benefitted an employer and a union, there was no § 302 violation because the organizing assistance does not qualify as a payment, loan, or delivery. *Sage Hospitality Res., LLC*, 390 F.3d at 219. The court also reasoned that any benefit "inherent in a more efficient resolution of recognition disputes does not constitute a 'thing of value' within the meaning of the statute." *Id.* Moreover, the court expressed concern that invalidating the suspect agreement for a § 302 violation would upset the balance of laws governing the recognition of unions. *Id.*

No other circuit has published an opinion involving the precise facts presented on this appeal, but several have addressed what the term "thing of value" means in the § 302 context. The Sixth Circuit rejected the argument that under § 302 "a thing of value" is restricted to things of monetary value. *United States v. Douglas*, 634 F.3d 852, 858 (6th Cir.), *cert. denied*, 131 S. Ct. 3039 (2011). In that case, General Motors gave high paying jobs to non-qualified relatives of union officials. The court found a violation of the statute occurred even though the thing of value was not money or some other tangible thing. *Id.*

6

The Second Circuit commented on the scope of the phrase "thing of value" when it explained that "[v]alue is usually set by the desire to have the 'thing' and depends upon the individual and the circumstances." *United States v. Roth*, 333 F.2d 450, 453 (2d Cir. 1964) (holding that a loan is a thing of value under § 302). It recommended that common sense should inform determinations of whether an improper benefit has been conferred.

> [I]t may be argued that a five-dollar Christmas tie is a "thing of value" and a Christmas present hopefully is to create good will in the recipient towards the donor. Countless hypothetical cases can be put, each on its facts approaching that evanescent borderline between the proper and the improper. No calculating machine has yet been invented to make these determinations with certainty. In the meantime the courts must rely upon the less mechanical judgment and common sense which under the present system is, and of necessity must be, lodged in judges and juries.

*Id.* at 454. We are inclined to agree that, in circumstances like these where we search for the line between the proper and the improper, we must rely upon our common sense.

It seems apparent that organizing assistance can be a thing of value, but an employer does not risk criminal sanctions simply because benefits extended to a labor union can be considered valuable. Violations of § 302 only involve payments, loans, or deliveries, 29 U.S.C. § 186 (a)–(b), and every benefit is not necessarily a payment, loan, or delivery. For example, intangible organizing

7

assistance cannot be loaned or delivered because the actions "lend" and "deliver" contemplate the transfer of tangible items.

Yet, a violation of § 302 cannot be ruled out merely because intangible assistance cannot be loaned or delivered. Section 302 also prohibits payment of a thing of value, and intangible services, privileges, or concessions can be paid or operate as payment. Whether something qualifies as a payment depends not on whether it is tangible or has monetary value, but on whether its performance fulfills an obligation. If employers offer organizing assistance with the intention of improperly influencing a union, then the policy concerns in § 302—curbing bribery and extortion—are implicated.

It is too broad to hold that all neutrality and cooperation agreements are exempt from the prohibitions in § 302. Employers and unions may set ground rules for an organizing campaign, even if the employer and union benefit from the agreement. But innocuous ground rules can become illegal payments if used as valuable consideration in a scheme to corrupt a union or to extort a benefit from an employer.

We need not address whether we require a "thing of value" to have monetary value. Here, Mulhall alleged and a jury could find that Mardi Gras's assistance had monetary value. As evidence of the value, Mulhall points to the

8

$100,000 Unite spent on the ballot initiative that was consideration for the organizing assistance. Mulhall's allegations are sufficient to support a § 302 claim.

We also are unpersuaded by arguments that either the rule of lenity or concerns about constitutionally protected speech counsel against allowing neutrality agreements to be covered by § 302. The rule of lenity applies only when a statute is ambiguous, *Salinas v. United States*, 522 U.S. 52, 66, 118 S. Ct. 469, 478 (1997), and here, the plain language of the statute is clear. The protected speech concerns arise out of a mistaken understanding that employers will be required to actively oppose unionization in order to avoid criminal sanctions under § 302. As we see it, an employer's decision to remain neutral or cooperate during an organizing campaign does not constitute a § 302 violation unless the assistance is an improper payment. If the assistance is not an improper payment, an employer's speech is not limited, and it may choose to oppose unionization.

Consequently, we find that Mulhall has stated a claim for relief, and we remand so that the district court can consider the § 302 claim and determine the reason why Unite and Mardi Gras agreed to cooperate with one another.

**REVERSED AND REMANDED**.

RESTANI, Judge, dissenting:

I respectfully dissent. I conclude that the reasoning of our sister circuits is correct. See Adcock v. Freightliner LLC, 550 F.3d 369 (4th Cir. 2008); Hotel Emps. & Rest. Emps. Union, Local 57 v. Sage Hospitality Res. LLC, 390 F.3d 206, 218–19 (3d Cir. 2004). Therefore, I would affirm the dismissal granted by the District Court.

I also write because I do not agree that an improper intent on behalf of the union or employer in demanding or offering the types of concessions at issue here transforms an otherwise "innocuous" concession into a bribe or constitutes extortion in violation of § 302 of the Labor Management Relations Act ("LMRA"). Mulhall has not alleged that Mardi Gras offered these concessions as a bribe.[1] Thus, I put this issue aside and focus on whether a union that demands these types of concessions with an improper intent commits extortion and thereby runs afoul of § 302.

Adding the element of intent is a non-starter because to do so conflicts with

---

[1] Mulhall's complaint states that "it is not alleged that Mardi Gras has violated § 302(a)(2) because it has not delivered the Information, Access, or Gag Clause demanded by Local 355." Rec. Ex. at 14, ¶ 38, ECF No. 12. According to the complaint, it is not the formation of the Agreement that violated § 302 but Unite's demand and request that the Agreement be enforced. Id. at ¶ 37. To the extent bribery is at issue, I agree with Adcock that "[b]y no stretch of the imagination are the concessions a means of bribing representatives of the Union[.]" 550 F.3d at 375.

the purpose of the LMRA regardless of whether the focus is the concessions or the intent behind them. Unions demand these types of concessions, and may threaten to cause disruptions if the concessions are not given. The purpose is to make it easier to achieve collective bargaining rights on behalf of the target employees. The LMRA is designed to promote both labor peace and collective bargaining. See Adcock, 550 F.3d at 375 (citing Arroyo v. United States, 359 U.S. 419, 425 (1959)) (noting the purpose behind § 302 is to promote "the integrity of the collective bargaining process"). The LMRA cannot promote collective bargaining and, at the same time, penalize unions that are attempting to achieve greater collective bargaining rights.

Even if the union has some other aim besides achieving collective bargaining rights (such as obtaining more members and dues without ever promoting the interest of the employees), such conduct implicates the union's duty to its members, not the collective bargaining process between the employer and the union. In such a situation, employees can decline to join the union and union members can leave the union or seek their own judicial remedies. We should not, however, turn § 302 upside down to protect against possible disadvantages resulting from some union actions.

Moreover, under the majority's holding, § 302 is not implicated unless the

11

concessions at issue are "used as valuable consideration in a scheme to corrupt a union or to extort a benefit from an employer." Maj. Op. at 9. Thus, at the pleading stage, the complaint must contain sufficient factual allegations showing the union demanded these concessions as extortion or were offered by the employer as a bribe, and not just as regular ground rules of organizing.

Here, Mulhall's complaint makes no allegations of wrongdoing relating to the formation of the Agreement or Unite's motives at the time of contracting. See Rec. Ex. at 7–8, ¶ 7–11, ECF No. 12. Mulhall merely alleges that unions, in general, have or may have improper motives when negotiating for these concessions. Rec. Ex. at 12, ¶ 28 ("Unions have made, and are liable to make, wage, benefit, and other concessions at the expense of employees they exclusively represent in collective bargaining in exchange, *quid pro quo*, for things of value from employers. . . ."). Such general allegations are insufficient under our pleading standards. Thus, even under the majority's theory, Mulhall's complaint fails to state a cause of action and should be dismissed.