**UNITED STATES of America,**
**Plaintiff-Appellee,**

v.

**Charles E. LEGGETT and John Henry**
**Eleveld, Defendants-Appellants.**

**No. 14255.**

United States Court of Appeals
Sixth Circuit.

July 25, 1961.

George E. Woods, Jr., Detroit, Mich., (George E. Woods, Jr., U. S. Atty., Robert E. DeMascio, Asst. U. S. Atty., Detroit, Mich., on the brief), for plaintiff-appellee.

Joseph I. Bulger, Chicago, Ill. (Joseph I. Bulger, G. J. Devanna, Chicago, Ill., on the brief), for defendants-appellants.

Before MILLER, Chief Judge, and McALLISTER and O'SULLIVAN, Circuit Judges.

SHACKELFORD MILLER, Jr., Chief Judge.

Appellants, Charles E. Leggett and John Henry Eleveld, were found guilty by a jury under two counts of an indictment charging them with transporting and causing to be transported in interstate commerce from Detroit, Michigan, to Fort Dodge, Iowa, a number of drums of polyester resin of a value in excess of $5,000.00, knowing the same to have been stolen, converted or taken by fraud; in violation of Sections 2314 and 2, Title 18 U.S.Code. The first count charged the transportation of 106 drums of resin on or about November 7, 1957. The second count charged the transportation of 114 drums of resin on or about May 12, 1958.

Leggett's motion for a new trial and arrest of judgment, and Eleveld's motion for a new trial and judgment of acquittal were overruled. Leggett received a sentence of one year and six months and was required to pay court costs in the amount of $1,760.00. Eleveld received a sentence of one year and was required to pay court costs in the amount of $440.00.

Appellants contend on this appeal that the evidence failed to show (1) that the appellants transported or caused to be transported in interstate commerce the resin in question, and (2) that the resin had been stolen, converted or taken by fraud, and that their motions for judgment of acquittal at the close of all the evidence in the case should have been sustained.

The evidence which is in considerable detail can be briefly summarized as follows. It showed that the National Procurement Company, of which the appellants were the dominant figures, obtained 106 drums of polyester resin in October 1957 from Reichhold Chemicals Company at its plant in Ferndale, Michigan. This was picked up by Dale Robinson, a truck driver for Dale's Cartage Company, and delivered to a warehouse called Bond Steel and Storage in Dearborn, Michigan. Eleveld paid Robinson Sixty Dollars in cash for his services. The warehouse was then advised that the drums were transferred to Joseph Dunwood and/or Acme Limited, Zurich, Switzerland. The warehouse received a letter on the letterhead of Acme Limited, signed "Joseph Dunwood," enclosing the warehouse receipts with instructions to release the drums to Sansone Bros. Cartage Company. The trucking company hauled the drums to Jefferson Terminal Warehouse in Detroit, Michigan. Leggett paid the

driver $133.00 in cash for the services. From there they were later taken by McCoy Trucking Co. to Glass Craft Boats, Inc. at Fort Dodge, Iowa, at the direction of E. A. Juzwik, a principal stockholder, vice-president and director of Glass Craft Boats, Inc., who delivered the warehouse receipts to the trucking company for that purpose.

On April 24, 1958, Reichhold Chemicals Company received another order for 114 drums of resin from National Procurement Company. These were picked up at the Reichhold plant and taken to Detroit Warehouse Company at Detroit by Kinme Annex Cartage Company. The truck driver was paid $104.09 in cash for the services. On written instructions from National Procurement Company they were released to Brada Cartage, which company delivered them to Detroit Harbor Terminals, Detroit, Michigan, where they were stored to the account of Joseph Dunwood. Brada was paid $128.93 in cash by appellant Eleveld. A letter was received from Acme Limited, signed by Joseph Dunwood, to release the drums to Juzwik. Norwalk Trucking Company picked up the drums. All but $165.00 of the storage bill was paid to Detroit Harbor Terminals by appellant Eleveld. Juzwik paid $165.00.

Juzwik testified that he issued his personal checks to the order of Joseph Dunwood for $7,000.00, $14,453.70 and $2,584.00 in payment for the warehouse receipts. The checks were made payable to Joseph Dunwood at the request of Leggett and were delivered to Leggett. The checks carried the endorsement of Joseph Dunwood. In addition, Juzwik paid an additional sum of $3,389.00 in cash to Leggett, because Leggett said he needed additional funds.

Reichhold Chemicals did not receive payment for either the October 1957 order or the April 1958 order.

Appellants' contention is that the foregoing evidence shows that the interstate shipments from Detroit, Michigan, to Fort Dodge, Iowa, were not shipments by them, but were shipments by Joseph Dunwood to Glass Craft Boats, Inc., after the National Procurement Company sold and delivered the resin to Dunwood in Detroit, Michigan. If the sale and delivery of the resin to Dunwood was an actual bona fide sale, this contention would have merit. However, if the purported sale to Dunwood was not a sale but a fictitious transaction, or merely a transfer of possession by appellants to their agent, who later sold to a purchaser in Iowa, the appellants caused the interstate shipment as charged in the indictment. Section 2, Title 18 U.S.Code, Pereira v. United States, 347 U.S. 1, 8–9, 74 S.Ct. 358, 98 L.Ed. 435; Metcalf v. United States, 6 Cir., 195 F.2d 213, 217; United States v. Tannuzzo, 2 Cir., 174 F.2d 177, 180; Baty v. United States, 9 Cir., 275 F.2d 310; United States v. Taylor, 2 Cir., 217 F.2d 397, 398. See also: Anstess v. United States, 7 Cir., 22 F.2d 594; Backun v. United States, 4 Cir., 112 F.2d 635.

In addition to the facts above stated, the office manager of the Jefferson Terminal Warehouse testified that Leggett and Eleveld came into her office in connection with the storage of the resin; that Eleveld was introduced to her as Joseph Dunwood; that he used a calling card in the name of Joseph Dunwood, and signed papers in that name. The secretary to the President of the Detroit Harbor Terminals testified that a man who introduced himself to her as Joseph Dunwood made the arrangements to store the 114 drums at that warehouse. She identified Eleveld as the man. Juzwik testified that he knew Leggett for seven or eight years; that Leggett told him he knew a man by the name of Dunwood who represented a company in Switzerland which was buying merchandise in America and from time to time would have surpluses that it would like to dispose of, which contact led to the purchase of the resin; and that Leggett delivered to him the warehouse receipts of the Jefferson Terminal Warehouse with the signature of Joseph Dunwood on them.

Joseph Dunwood did not testify. Nor did the evidence show what consideration,

if any, passed from the alleged purchaser, Joseph Dunwood, to the National Procurement Company in exchange for the warehouse receipts, if such a sale actually occurred.

The Supreme Court said in Graves v. United States, 150 U.S. 118, 121, 14 S.Ct. 40, 41, 37 L.Ed. 1021, "The rule, even in criminal cases, is that, if a party has it peculiarly within his power to produce witnesses whose testimony would elucidate the transaction, the fact that he does not do it creates the presumption that the testimony, if produced, would be unfavorable." See also: United States v. Conforti, 7 Cir., 200 F.2d 365, 369, certiorari denied, 345 U.S. 925, 73 S.Ct. 782, 97 L.Ed. 1356; Campbell v. United States, 1 Cir., 269 F.2d 688, 692, reversed on other grounds, 365 U.S. 85, 81 S.Ct. 421, 5 L.Ed.2d 428; Troutman v. Mutual Life Ins. Co. of New York, 6 Cir., 125 F.2d 769, 773.

In considering a motion for acquittal, the District Judge must take that view of the evidence most favorable to the Government, with inferences reasonably and justifiably to be drawn therefrom, and determine whether a reasonable mind might fairly conclude guilt beyond a reasonable doubt. In making such determination the trial judge does not pass upon the credibility of the witnesses or the weight of the evidence. Crockett v. United States, 5 Cir., 234 F.2d 560; Bogy v. United States, 6 Cir., 96 F.2d 734, 740, certiorari denied, 305 U.S. 608, 59 S. Ct. 68, 83 L.Ed. 387. If he concludes that upon such evidence there *must* be such a doubt, he must grant the motion. But if he concludes that it is a question about which reasonable minds might differ, the motion should be overruled and the issue left to the jury. Curley v. United States, 81 U.S.App.D.C. 389, 160 F.2d 229, 232–233, certiorari denied, 331 U.S. 837, 67 S.Ct. 1511, 91 L.Ed. 1850; Cooper v. United States, 94 U.S.App.D.C. 343, 218 F.2d 39, 41; Lambert v. United States, 5 Cir., 261 F.2d 799, 801; Linden v. United States, 4 Cir., 254 F.2d 560, 567.

We are of the opinion that the evidence in the present case was sufficient to take to the jury the issue of whether the appellants caused to be transported in interstate commerce the resin which was ultimately sold and delivered to Glass Craft Boats, Inc., in Fort Dodge, Iowa.

Nor do we think that there is any merit in appellants' further contention that the evidence was insufficient to take to the jury the question of whether the resin was obtained by fraud. In addition to the evidence previously referred to, it was also shown that the purchase orders for the two purchases of resin totaled $34,-352.00, no part of which was ever paid, which resin was shortly thereafter delivered to Glass Craft Boats, Inc., for $27,426.70; that the New York address of National Procurement Company at 550 Fifth Avenue, New York City, was a telephone and mail answering service at that address, and that all mail received for National Procurement Company was forwarded to an address in Chicago, Illinois; and that the National Procurement Company used a telephone secretarial service at 438 Woodward Building in Washington, D. C., from which phone messages and mail were at first sent to New York and later sent to Box 110, Oak Park, Illinois, Attention of Charles E. Leggett.

The question of fraud involves the element of intent. Since it is impossible to look into a defendant's mind for the purpose of ascertaining his intent, it is necessary to consider the circumstances surrounding the transaction and determine intent from what he does or fails to do. By reason of its nature, it is usually very difficult to prove fraud by direct evidence, and such proof is not necessary. Pergrem v. Smith, Ky., 255 S.W.2d 42, 44; Battjes v. United States, 6 Cir., 172 F.2d 1, 5. The issue of fraud is commonly determined by certain recognized indicia, denominated "badges of fraud," which are circumstances so frequently attending fraudulent transfers that an inference of fraud arises from them. Pergrem v. Smith, Ky., supra, 255

S.W.2d 42, 44; Leonardo v. Leonardo, 102 U.S.App.D.C. 119, 251 F.2d 22, 27; Bentley v. Caille, 289 Mich. 74, 78, 286 N.W. 163, 164. Inadequacy of consideration, secret or hurried transactions not in the usual mode of doing business, and the use of dummies or fictitious parties are common examples of "badges of fraud." As said in the Bentley case, supra: "No effort to hinder or delay creditors is more severely condemned by the law than an attempt by a debtor to place his property where he can still enjoy it and at the same time require his creditors to remain unsatisfied." Although "badges of fraud" are not conclusive and are more or less strong or weak according to their nature and the number occurring in the same case, "a concurrence of several badges will always make out a strong case." Timmer v. Pietrzyk, 272 Mich. 238, 242, 261 N.W. 313, 314; Aiken v. United States, 4 Cir., 108 F.2d 182, 183; Battjes v. United States, supra, 6 Cir., 172 F.2d 1, 5; Wuichet v. United States, 6 Cir., 8 F.2d 561, 562. It is well settled that circumstantial evidence, if strong enough to convince a jury of a defendant's guilt beyond a reasonable doubt, is sufficient to take a case to the jury and sustain a verdict. Holland v. United States, 348 U.S. 121, 139–140, 75 S.Ct. 127, 99 L.Ed. 150; United States v. Comer, 6 Cir., 288 F.2d 174, 175; United States v. Baxter, 6 Cir., 289 F.2d 487.

In the present case, the immediate disposition of the resin at a price approximately twenty per cent below its purchase price, the failure to pay any portion of the purchase price, the misrepresentation of a bona fide office in New York and Washington, the transfer of the resin from one place to another, always by a different cartage company, the payment of substantial expenses involved therein by cash, and of particular importance, the use of a nonexistent or fictitious purchaser in an effort to isolate themselves from the ultimate disposition of the property, were more than enough to take to the jury the issue of the procurement of the resin by fraud.

The judgment is affirmed.