**UNITED STATES of America,**
**Plaintiff-Appellee,**

v.

**Fred Michael CONTI, Defendant-**
**Appellant.**

**No. 15746.**

United States Court of Appeals
Sixth Circuit.

Dec. 11, 1964.

Adrian B. Fink, Jr., Cleveland, Ohio, for appellant.

Bernard J. Stuplinski, Chief Asst. U. S. Atty., Cleveland, Ohio, Merle M. McCurdy, U. S. Atty., Elmer A. Giuliani, Asst. U. S. Atty., Cleveland, Ohio, Charles E. Cook, Legal Asst. to U. S. Atty., on brief, for appellee.

Before MILLER, O'SULLIVAN and EDWARDS, Circuit Judges.

SHACKELFORD MILLER, Jr., Circuit Judge.

The defendant, Fred Michael Conti, was indicted for entering the Oakwood Branch of the City Bank Company, Lorain, Ohio, with intent to commit a felony or larceny, in violation of Section 2113(a), Title 18, United States Code. He entered a plea of not guilty, waived trial by jury, and the case was tried to the court without a jury. The District Judge found the defendant guilty and sentenced him to imprisonment for a period of 9 years and 5 months, from which judgment this appeal was taken.

The Government introduced evidence showing that at approximately 1:40 A.M. on May 3, 1963, the burglar alarm of the Oakwood Branch of the City Bank Company at Lorain, Ohio, went off and was answered by the police of the City of Lorain. Investigation by the police upon arriving at the bank showed that there was a hole in the roof and that a vent, which had been covering this hole, had been pushed aside. Lying on the roof near the hole were a long coil of rope, two tin snips, one wrecking bar, a sledge hammer, and a wedge. The windows and the doors of the bank were intact. Nobody was found on the roof. When the manager of the bank arrived police officers went with him inside the building but no one was found there.

They observed that the crossbar that was used to hold the north door closed was on the floor, along with a wrecking bar. In the boiler room, which was right off the bank proper, there was a ladder under the hole in the roof and the lead-in pipe from the intake ventilator was pushed to the side.

Leonard Rosenberg, a hardware dealer in the defendant's neighborhood, testified that on May 2, 1963, about the middle of the afternoon, the defendant purchased from him at his store 41 feet by ¾ rope, a sledge hammer, two wedges, two wrecking bars and a pair of gloves. The defendant did not ask the price of any of the articles purchased, but said that he would pay for them later. The defendant's father sent the money in the amount of $32.58 to the witness by another man approximately a month and a half before the trial. The sledge hammer, wedge, and the two wrecking bars, found on the roof and in the bank were identified by a code number that the witness had placed upon them when they were placed in stock as being among the articles sold to the defendant on May 2. He testified that the rope found on the roof of the bank was ¾ inch rope and looked like the kind of rope he had sold to the defendant. The witness also testified that about noon on May 3, 1963, the defendant came to the store and told him that he had lost the articles he had purchased and that if anybody came in and asked him about it, he was to tell them that he didn't know anything about it. Shortly thereafter, at about 1 or 1:15 P.M. that day, two F.B.I. agents arrived at Mr. Rosenberg's hardware store and talked with him. Mr. Rosenberg showed them a coil of rope in the rear of his store, from which he had sold 41 feet to the defendant the day before, and gave them a piece about six or eight inches long, which he cut off of it. This was sent, together with the rope found on the roof of the bank, to the F.B.I. laboratory in Washington, D. C. An F.B.I. agent, who was an expert in the examination and comparison of hairs, fibers, fabrics, and related materials,

such as ropes, and who examined the two pieces of rope by microscope, in addition to the unaided eye, testified that the two pieces of rope were originally one continuous piece. The witness testified that he had not sold any of the rope to any other customer after the sale to the defendant.

Shortly thereafter the F.B.I. agents questioned the defendant at his home. Upon asking him where he was the previous night, he stated that he was home all of that night and added that he was home every night.

At the trial the defendant did not testify. Four witnesses testified for him with respect to an alibi. A cousin testified that he met the defendant between 6:30 and 7 P.M. on May 2 and a little later he drove him to the home of defendant's brother-in-law, where he dropped him off in the neighborhood of 7:30 P.M. or 20 minutes to 8. The brother-in-law testified that the defendant arrived at his house at approximately 7:30 stayed there until after 12:30, at which time he drove the defendant home, arriving there at about 20 or 25 minutes after 1:00 A.M. on the morning of May 3. Defendant lived on Wayside Road in Cleveland. The brother-in-law's wife, who was the sister of the defendant's former wife, testified that the defendant came to their home at 844 East 207th Street, Euclid, Ohio, at about 7:30 or 8 P.M. on May 2 and that it was approximately 12:45 A.M. when her husband left to drive him home. The defendant's former wife testified that she joined the others at the home of her brother-in-law at about 10:40 or 10:45 P.M. on May 2 after finishing her work at 9 P.M.; that the defendant was there when she arrived; and that she left the house in her own car about 12:30 or 12:45 A.M., at the same time when her brother-in-law and the defendant left, who followed her in their car until she reached her own home at about 5 to 15 minutes after 1:00 A.M. A government agent testified that it was approximately 27½ miles from downtown Cleveland to the bank.

At the close of the Government's case the defendant moved for a judgment of acquittal, which was overruled by the Court. On this appeal he contends it was error (1) for the District Judge to have overruled this motion, and (2) that on the basis of all the evidence presented, the defendant's guilt was not established beyond a reasonable doubt. He stresses the fact that the evidence of his guilt was entirely circumstantial and was completely rebutted by the testimony of his alibi witnesses, which showed that it was physically impossible for him to have been at the bank with the equipment found there at 1:40 A.M. when the burglar alarm went off.

■■ There is no merit in defendant's criticism of the evidence on the ground that it is entirely circumstantial. Circumstantial evidence, if strong enough to convince a jury of a defendant's guilt beyond a reasonable doubt, is sufficient to take a case to the jury and sustain a verdict. United States v. Comer, 288 F.2d 174, 175, C.A.6th, cert. denied, 366 U.S. 925, 81 S.Ct. 1351, 6 L.Ed.2d 384; United States v. Baxter, 289 F.2d 487, C.A.6th, cert. denied, 368 U.S. 827, 82 S.Ct. 48, 7 L.Ed.2d 31; United States v. Leggett and Eleveld, 292 F.2d 423, 427, C.A.6th, cert. denied, 368 U.S. 914, 82 S.Ct. 194, 7 L.Ed.2d 131, rehearing denied, 368 U.S. 979, 82 S.Ct. 476, 7 L.Ed.2d 441; United States v. Carter, 311 F.2d 934, 940, C.A.6th, cert. denied, 373 U.S. 915, 83 S.Ct. 1301, 10 L.Ed.2d 415, rehearing denied, 373 U.S. 954, 83 S.Ct. 1677, 10 L.Ed.2d 708.

■ Appellant's contention that where the government evidence is circumstantial, it must be such as to exclude every reasonable hypothesis other than that of guilt, has considerable support in the cases decided prior to December 6, 1954. But, in Holland v. United States, 348 U.S. 121, 139–140, 75 S.Ct. 127, 99 L.Ed. 150, rehearing denied, 348 U.S. 932, 75 S.Ct. 334, 99 L.Ed. 731, decided on that date, the Supreme Court stated that the better rule was that where the jury is properly instructed on

the standards for reasonable doubt, such an additional instruction on circumstantial evidence was confusing and incorrect. Accordingly, this Court has ruled since that date that it is not necessary that circumstantial evidence be such as would remove every reasonable hypothesis except that of guilt. United States v. Young, 291 F.2d 389, C.A.6th; United States v. Comer, supra, 288 F.2d 174, 175, C.A.6th, cert. denied, 366 U.S. 925, 81 S.Ct. 1351, 6 L.Ed.2d 384; United States v. Thomas, 303 F.2d 561, 562, C.A.6th; United States v. Carter, supra, 311 F.2d 934, 940, C.A.6th, cert. denied, 373 U.S. 915, 83 S.Ct. 1301, 10 L.Ed.2d 415, rehearing denied, 373 U.S. 954, 83 S.Ct. 1677, 10 L.Ed.2d 708.

■■ Nor is the fact that the Government's evidence is contradicted by defendant's evidence of an alibi of any importance in considering the questions now before us. In testing the sufficiency of the evidence to withstand a motion for judgment of acquittal, the trial judge does not pass upon the credibility of the witnesses or the weight of the evidence. On the contrary, he must view the evidence and the inferences that may justifiably be drawn therefrom in the light most favorable to the Government. United States v. Decker, 304 F.2d 702, 705, C.A.6th; United States v. Carter, supra, 311 F.2d 934, 940, C.A.6th, cert. denied, 373 U.S. 915, 83 S.Ct. 1301, 10 L.Ed.2d 415, rehearing denied, 373 U.S. 954, 83 S.Ct. 1677, 10 L.Ed.2d 708; United States v. Berkley, 288 F.2d 713, 716, C.A.6th, cert. denied, 368 U.S. 822, 82 S.Ct. 41, 7 L.Ed.2d 27. If, under such view of the evidence he concludes that a reasonable mind might fairly conclude guilt beyond a reasonable doubt, the motion should be overruled and the issue left to the jury. It is only where under such view of the evidence he concludes there must be such a doubt in a reasonable mind, should the motion be granted. United States v. Leggett and Eleveld, supra, 292 F.2d 423, 426, C.A.6th, cert. denied, 368 U.S. 914, 82 S.Ct. 194, 7 L.Ed.2d 131, rehearing denied, 368 U.S. 979, 82 S.Ct. 476, 7 L.Ed.2d 441;

United States v. Sykes, 305 F.2d 172, 176, C.A.6th, reversed on other grounds, sub nomine, Preston v. United States, 376 U.S. 364, 84 S.Ct. 881, 11 L.Ed.2d 777; Curley v. United States, 81 U.S.App.D.C. 389, 160 F.2d 229, 232–233, cert. denied, 331 U.S. 837, 67 S.Ct. 1511, 91 L.Ed. 1850, rehearing denied, 331 U.S. 869, 67 S.Ct. 1729, 91 L.Ed. 1872; Riggs v. United States, 280 F.2d 949, 954, C.A.5th; Pritchett v. United States, 87 U.S.App.D.C. 374, 185 F.2d 438, 439, cert. denied, 341 U.S. 905, 71 S.Ct. 608, 95 L.Ed. 1344; United States v. Outer Harbor Dock & Wharf Co., 124 F.Supp. 337, 339, S.D. Cal., Rule 29(a), Rules of Criminal Procedure.

■ In considering a contention by an appellant that the evidence is insufficient to support a judgment of conviction, an appellate court will reverse the judgment if it is not supported by substantial and competent evidence, but will not disturb a conviction supported by such evidence. Glasser v. United States, 315 U.S. 60, 80, 62 S.Ct. 457, 86 L.Ed. 680, rehearing denied, 315 U.S. 827, 62 S.Ct. 637, 86 L.Ed. 1222; United States v. Knight, 336 U.S. 505, 508, 69 S.Ct. 704, 93 L.Ed. 845; United States v. Decker, supra, 304 F.2d 702, 705, C.A.6th. In making such a determination the Court must take that view of the evidence with inferences reasonably and justifiably to be drawn therefrom most favorable to the Government, without weighing the evidence or determining the credibility of the witnesses. Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. Battjes v. United States, 172 F.2d 1, 5, C.A.6th; Kowalchuk v. United States, 176 F.2d 873, 876, C.A.6th; Apel v. United States, 247 F.2d 277, 279–280, C.A.8th; N.L.R.B. v. Columbian Enameling & Stamping Co., 306 U.S. 292, 300, 59 S.Ct. 501, 83 L.Ed. 660.

The District Judge made an interesting and convincing analysis of the evidence in support of his ruling, to which, we refer. Applying the principles hereinabove referred to, we are of the opinion

that there was no error on his part in overruling the motion for judgment of acquittal and that the judgment of conviction is supported by substantial evidence. We make special reference to the following.

The evidence is conclusive that some of the articles, purchased by the defendant the afternoon before, were found on the roof beside the hole shortly after the burglar alarm was triggered. The natural and logical inference is that they were being used by the defendant, who bought them and took them into his possession. The evidence in no way even suggests that they were bought for some other purpose. This inference is materially strengthened by defendant's request of Mr. Rosenberg, after the articles were found by the police on the roof of and in the bank, that he tell anyone making inquiry about it that he didn't know anything about it. Such a request was a most unusual one unless the defendant knew that the police had found the articles and were trying to trace their ownership. The only reasonable explanation of how the defendant knew that the police had found the articles is that he knew where he had left them in his hurry to leave, and he was trying to cover up. His conflicting alibis (1) that he was at home all of that night, and (2) that he was at his brother-in-law's home until after 12:30 A.M. would fully justify the judge or jury considering the matter in disbelieving his statement that he had "lost" the articles previously purchased. He did not say the articles had been stolen; he said they had been "lost." How does one lose 41 feet of heavy rope, two wrecking bars, two wedges, and a heavy sledge hammer? Where were they lost? When were they last seen? What was done to relocate them? With whom, if anybody, was the loss discussed? These material facts are left completely unanswered. The logical inference that they were being used by the defendant who bought them a few hours before is in no way rebutted.

The evidence is, in our opinion, such relevant evidence as a reasonable mind might accept as adequate to support a conclusion of guilt beyond a reasonable doubt. Battjes v. United States, supra, 172 F.2d 1, 5, C.A.6th.

The judgment is affirmed.