UNITED STATES of America,
Plaintiff-Appellee,

v.

Tommy Lewis WOLFENBARGER,
Defendant-Appellant,

No. 19626.

United States Court of Appeals,
Sixth Circuit.

May 15, 1970.

Robert H. Schwartz, Nashville, Tenn., for defendant-appellant; Thomas C. Binkley (court appointed), Nashville, Tenn., on the brief.

William Buford Bates, Asst. U. S. Atty., Nashville, Tenn., for plaintiff-appellee; Charles H. Anderson, U. S. Atty., Nashville, Tenn., on the brief.

Before O'SULLIVAN, Senior Circuit Judge, COMBS, Circuit Judge, and WILSON *, District Judge.

FRANK W. WILSON, District Judge.

The appellant (defendant) was convicted of receiving a stolen motor vehicle moving in interstate commerce, having knowledge that the motor vehicle was stolen, in violation of 18 U.S.C. § 2313. The single issue presented upon this appeal is whether the evidence was suffi-

* Honorable FRANK W. WILSON, United States District Judge for the Eastern District of Tennessee, sitting by designation.

cient to support the conviction. The case was tried before a jury and upon proper instructions of the Court, the jury returned a verdict of guilty. It is contended on behalf of the defendant that the evidence was insufficient to permit the jury to find either that the defendant received the subject vehicle or that he had knowledge of its being a stolen vehicle.

The Government's proof in this case consisted of the testimony of three witnesses, two used car dealers and a special agent of the Federal Bureau of Investigation. The defendant, electing to stand upon a motion for a directed verdict made at the conclusion of the Government's evidence, offered no proof.

The witnesses for the Government established without equivocation in the record that a 1967 Cadillac automobile was stolen from a used car lot in Oklahoma City, Oklahoma, on August 5, 1968. The same vehicle was located by F.B.I. agents in an apartment parking lot in Nashville, Tennessee, on October 2, 1968. After properly identifying the vehicle as the 1967 Cadillac stolen in Oklahoma City, agents of the F.B.I. conducted a surveillance of the parked automobile to identify anyone coming to the vehicle.

The remainder of the Government's case, including all evidence purporting to relate to receipt of the vehicle by the defendant and purporting to relate to his knowledge of its stolen character, is dependent upon evidence developed in the cross-examination and redirect evidence of the government witness, Special Agent John Rogers. It is to the sufficiency of this evidence that the present appeal is directed.

Upon cross-examination of Agent Rogers, evidence was developed relating to the arrest of the defendant and his interrogation following his arrest. This testimony reflected that Agent Rogers participated with other government agents in a surveillance of the Cadillac automobile on October 3, 1968. During the course of the surveillance on this date the defendant was arrested. Agent Rogers did not participate in the actual arrest, but rather he arrived on the scene immediately following the defendant's arrest by other government agents. When he arrived at the scene, the defendant was standing beside the stolen automobile in the custody of other agents. Agent Rogers further testified that in the interrogation of the defendant that followed his arrest, the defendant stated that he had received the key to the Cadillac automobile from another person and was merely moving the car at the request of the other person. When requested to identify the person who had given him the key to the automobile, the defendant declined to do so. Upon further interrogation the defendant was asked whether he knew that the car was a stolen automobile. At this point in his testimony Agent Rogers gave somewhat variant accounts of the defendant's response. His first testimony was as follows:

"He told us that he was not sure that the car was stolen, but that he thought it was stolen."

The witness was then pressed further on the point and the following testimony was elicited:

"Q Will you tell me why you would include in the report that he stated that he did not personally know that this Cadillac was stolen, but stated: 'I had a good idea it wasn't right.'?

"A Well, that is evidently what he said. That is what I think I told you just now, the fact that he didn't know."

Later still the witness testified:

"Q Mr. Rogers, isn't it a fact that Mr. Wolfenbarger told you some seven or eight times that he didn't know this car was stolen, before making this remark you state here where he said, 'I had a good idea it wasn't right.'?

"A No, Sir. My recollection is that his indication is just as recorded there, the fact that he did not know the car was stolen, but that he thought it was stolen, or something to that effect.

"Q You didn't put down here that he thought it was stolen, did you?

"A Well, that he—I have forgotten the exact wording of that, but I will stand on that wording, whatever it is."

It should be noted that the statement referred to in the above examination of the witness was never itself placed in evidence, nor was it read into the record beyond the extent noted. Finally, upon redirect examination the following testimony was given:

"Q Mr. Rogers, since they have gotten into this interview, I would like to ask you just one or two questions about it. When he told you—basically what did he tell you about whose car this was and who had had possession of this car?

"A. He did not tell us who had had possession of the car.

"Q Did he tell you—what did he tell you about possession of the car, what was the whole thing he told you about it?

"A He told us someone had given him a key and requested him to move the car and that he didn't know it was stolen, but that he had an idea it was, or something to that effect.

"Q Did you ask him who this alleged individual was who gave him the key?

"A Yes, Sir, we did.

"Q What did he say?

"A. He refused to tell us."

■ Before considering further the sufficiency of the above evidence to support the verdict of the jury, the scope and purpose of the present review should be noted. As stated by this Court in Blalock v. United States, 154 F.2d 591 (C.A. 6, 1946), cert. denied 329 U.S. 738, 67 S.Ct. 67, 91 L.Ed. 637, reh. denied 329 U.S. 828, 67 S.Ct. 184, 91 L.Ed. 703:

" * * * We cannot weigh the evidence but we must take that view of it, and the inferences reasonably and justifiably to be drawn from it, most favorable to the Government and determine therefrom whether a verdict against appellant might have been law-fully rendered and if there was substantially competent evidence which would support the conviction, the refusal of a directed verdict must be sustained. It is unnecessary that the guilt of the accused be shown alone by direct evidence."

See also United States v. Ayotte, 385 F.2d 988 (C.A.6, 1967); and United States v. Conti, 339 F.2d 10 (C.A.6, 1964).

Returning to the evidence in the case, it is contended on behalf of the defendant that there is insufficient evidence of possession of the subject automobile by the defendant to warrant the jury in finding either that the defendant "received" the automobile or to warrant any inference of guilty knowledge on the part of the defendant. It is further contended that in the absence of a permissible inference of guilty knowledge arising from possession, there was insufficient evidence to warrant the jury in finding that the defendant had knowledge that the automobile was stolen, an essential element of the offense charged.

■■ As regards possession of the automobile, while the government agent who testified did not participate in the arrest of the defendant, nor did he witness the defendant within the stolen automobile, there was evidence that the defendant was standing beside the automobile immediately following his arrest. (It does not appear from the record why counsel for the Government did not use as witnesses the agents who made the arrest). Furthermore, there is evidence that the defendant himself conceded that he had the keys to the automobile and that he was in the process of moving the automobile upon instructions of an acquaintance whom he declined to identify. It should be recalled in this regard that possession, as defined in the law, includes not only actual possession, but also constructive possession. A person who knowingly has direct physical control over a thing at a given time is then in actual possession of it. A person who, although not in actual possession, knowingly has both the power and intention

at any given time to exercise dominion and control over a thing is then in constructive possession of such property. Pearson v. United States, 192 F.2d 681 (C.A.6, 1951); Brothers v. United States, 328 F.2d 151 (C.A.9, 1964); Amaya v. United States, 373 F.2d 197 (C.A.10, 1967); Barnes v. United States, 341 F.2d 189 (C.A.5, 1965). Upon the evidence in this case it would be for the jury, subject to appropriate instructions from the Court, to determine whether the defendant had actual or constructive possession of the subject automobile. While the evidence of possession may have been meager, and unneceessarily so, the foregoing is sufficient to leave to the jury the issue of possession and is sufficient to permit the jury to find that the defendant "received" the vehicle within the meaning of that term in § 2313, Title 18 U.S.C.

 As regards the element of guilty knowledge, there exists testimony in the record both of the defendant's statement at the time of his arrest that he knew the automobile to be stolen or that he "knew it wasn't right," and there also exists the permissible inference of guilty knowledge that may be drawn from unexplained possession of recently stolen property. It is well established law that unexplained possession of recently stolen property permits a jury to draw the inference that the person in possession knew the property to have been stolen and the jury was correctly instructed in this regard. Wilson v. United States, 162 U.S. 613, 40 L.Ed. 1090, 16 S.Ct. 895 (1896); Rugendorf v. United States, 376 U.S. 528, 84 S.Ct. 825, 11 L.Ed.2d 887 (1964); Pearson v. United States, 192 F.2d 681 (C.A.6, 1951); Brubaker v. United States, 183 F.2d 894 (C.A.6, 1950); United States v. Prujansky, 415 F.2d 1045 (C.A.6, 1969). In this connection the term "recently" is a relative term, depending very substantially upon the circumstances of the particular case for its meaning. Although the inference of guilty knowledge that may flow from possession of a recently stolen motor vehicle grows weaker as the time of the possession recedes from the time of the theft, and although some two months had here elapsed from the time of the theft to the time of the defendant's arrest, this likewise presents a matter for the jury under appropriate instructions. United States v. Licausi, 413 F.2d 1118 (C.A.5, 1969). See also United States v. Prujansky, 415 F.2d 1045 (C.A.6, 1969).

Having concluded that competent and substantial evidence exists in support of the verdict, the judgment of the trial court is affirmed.