786 F.2d 1167
 Unpublished Disposition
NOTICE: Sixth Circuit Rule 24(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Sixth Circuit.
UNITED STATES OF AMERICA, Plaintiff-Appellee,
v.
JERRY E. HUFF, Defendant-Appellant.
 85-5504
 United States Court of Appeals, Sixth Circuit.
 2/28/86
 
 E.D.Tenn.
 REVERSED AND REMANDED
 ON APPEAL FROM THE UNITED STATES DISTRICT COURT FOR THE EASTERN DISTRICT OF TENNESSEE
 BEFORE: LIVELY, Chief Judge; WELLFORD, Circuit Judge; and PORTER, Senior District Judge.*
 I.
 PER CURIAM.
 
 
 1
 On October 30, 1984, a grand jury returned a two court indictment charging appellant Jerry E. Huff and others with federal civil rights laws violations based on incidents occurring at the Jellico, Tennessee, city jail on March 20, 1983. The first count of the indictment charged all defendants with conspiring to violate the civil rights of Glen Gambel in violation of 18 U.S.C. Sec. 241. The second count charged all five defendants with violating 18 U.S.C. Secs. 2 and 242, and alleged that Huff, Michael Bowlin, and Wayne Brummett aided and abetted prisoners, Harvey Douglas and Tommy Joe Bowlin, in physically assaulting Gambel while he was in police custody and in jail. There was no explanation as to why there was a delay of more than a year and a half between the incident and the indictment.
 
 
 2
 After Tommy Joe Bowlin pleaded quilty to both charges, Brummett also entered a guilty plea, admitting also that he had conspired to violate the rights of Catherine Jane Stary Gambel, who had been in the company of Glen Gambel during the time in controversy when they were taken into custody by Huff and by codefendant, Michael Bowlin, Jellico police officers.
 
 
 3
 The case against Bowlin and Douglas was set for trial for December 18, 1984, after the court had ordered a psychiatric evaluation for Douglas, but the district court denied Huff's motion for a severance of his case from that of Douglas. When the trial was postponed pending evaluation of Douglas' competency, Huff filed a motion to dismiss on speedy trial grounds, which was denied by the district court.
 
 
 4
 Subsequently, however, the district court granted a motion by appellant Huff and Michael Bowlin for severance from defendant Douglas and denied the government's motion for a continuance of the trial date. On the first day of trial, the district court denied Huff's motion in limine to exclude evidence of his alleged prior 'bad acts,' his involvement in and his awareness of a potential civil lawsuit based on his alleged use of excessive force in making another arrest at an earlier time.
 
 
 5
 The jury found Huff guilty on both counts of the indictment and Bowling guilty on count two. Alleging insufficient evidence, Huff moved for a judgment of acquittal and for a new trial. The district court denied those motions and sentenced Huff to concurrent sentences of ten years on each court. This appeal by Huff followed, raising a number of issues.
 
 II.
 
 6
 We set out the evidence, viewing it in the light most favorable to the government and drawing reasonable inferences in favor of the jury's verdict. See Glasser v. United States, 315 U.S. 60, 80 (1942); United States v. Conti, 339 F.2d 10, 13 (6th Cir. 1964).
 
 
 7
 Huff and Michael Bowlin were police officers with the Jellico Police Department during the episode which led to Huff's conviction. They were on duty the night of March 20, 1983, and were working out of the Jellico jail. Douglas and Tommy Joe Bowlin (not related to officer Michael Bowlin) were incarcerated in the jail at that time. Brummett was a fire department dispatcher who normally worked at the jail and although off-duty was nevertheless at the jail. Donald Elliott, and charged, was the Fire Department dispatcher who was on duty that night, and was present at the jail.
 
 
 8
 While on patrol, Huff and Bowlin pulled over a car weaving across the highway, driven by Glen Gambel on I-75 near the Tennessee-Kentucky border during the early morning hours. They had difficulty stopping him. Huff and Bowlin arrested Gambel for driving under the influence of alcohol. They handcuffed him and transported him to the Jellico jail. When Huff and Bowlin arrived at the Jellico jail, Bowlin announced in the presence of dispatcher Brummett and Harvey Douglas, a prisoner 'trusty,' that Gambel 'was a smartass and he needed [to be] whipped.' Douglas responded that, if he wanted Gambel 'whipped,' he should put him in the cell with him and Tommy Joe Bowlin.[1] Brummett testified that, at some point, appellant Huff offered to reward Douglas and fellow inmate Bowlin with drinks and candy if they beat Gambel.
 
 
 9
 During the process of booking Gambel, Bowlin struck him with the back of his hand.[2] After booking Gambel, Huff and Bowlin transported him to a hospital for a blood test for intoxication. During their absence, Douglas and Brummett went to Tommy Joe Bowlin's cell to persuade him to participate in beating Gambel upon his return to jail. They informed Bowlin that the officers were putting an inmate in the cell with them and that they were to beat him. Bowlin agreed when he was told that Officers Huff and Bowlin knew about the plan. At the same time Brummett and Douglas warned another prisoner to stay in his cell and pretend that he was asleep. Brummett then placed Douglas in the same cell with Bowlin.
 
 
 10
 Thomas Barclay, the Jellico police chief, testified that it was standard procedure for a new arrestee, such as Gambel, to be placed in an unoccupied cell, particularly if intoxicated or belligerent. Gambel, nevertheless, was placed in the cell occupied by Douglas and Bowlin, who, pursuant to plan, began beating Gambel immediately after he was locked in their cell. The bearing, loud enough to be heard throughout the jail, lasting two or three minutes, began while Huff was in the immediate vicinity. While the beating was taking place, Huff walked out of the cell block area. Although he had a hearing problem, Huff heard the commotion and then announced that he had better go back into the cell block before the inmates beat Gambel too severely.
 
 
 11
 After observing Gambel lying in the cell with Tommy Joe Bowlin 'hovering' over him, Officers Huff and Bowlin let Douglas out of the cell and asked dispatcher Elliott to call an ambulance. Pursuant to the plan he and Douglas had discussed, Tommy Joe Bowlin stated that Gambel had started a fight. In conflict with the usual practice, Huff left Tommy Joe Bowlin and Gambel locked in the cell together between the time of the beating and the time Gambel was taken to the hospital.
 
 
 12
 Later that morning, Huff returned to the cell in which Gambel had been beaten. Tommy Joe Bowlin remained locked in that cell, and Douglas was standing outside its bars. Huff gave Douglas a coke, and poured some into a glass for Bowlin. Huff had never brought Bowlin a drink before that time. Huff also congratulated Bowlin and Douglas on the 'good job' they did, and stated, 'you boys deserve this.'
 
 III.
 
 13
 The principal issue of concern preserved by appellant on appeal, concerns the introduction of evidence of Huff's involvement in a prior civil controversy. During the prosecution's case in chief, Barclay testified he and Huff had discussed a separate incident in which it was alleged Huff had used excessive force in making an arrest on July 4, 1982, some nine months before the indictment episode. Barclay further testified he and Huff discussed the possibility that this incident might lead to a civil suit against Huff. On cross-examination, Huff was again questioned about this. Huff contends it was prejudicial and error for the court to admit this evidence. He claims that the prior acts were inadmissible not only because they were not substantially similar to the crimes charged against Huff in the present case, but also because they were not admitted for any valid purpose. He argues therefore that under Fed. R. Evid. 404(b), the evidence was more prejudicial than probative.[3] The government responds that this evidence was proof of Huff's motive in soliciting the prisoners to assault Gambel.
 
 
 14
 This circuit has stated guidelines for admission under Rule 404(b): "Generally, this evidence must be sustantially similar and near in time to the offense charged, must be in issue, and must have more probative value than prejudicial impact." United States v. McFadger-Snider, 552 F.2d 1178, 1183 (6th Cir. 1977) (quoting United States v. Largent, 545 F.2d 1039, 1043 (6th Cir. 1976), cert. denied, 429 U.S. 1098 (1977)). We have also held that trial courts should be flexible in considering admissibility of evidence under Rule 404(b). We apply an abuse of discretion standard to the trial judge's decision on whether evidence is more probative than prejudicial. We also 'look at the evidence in a light most favorable to its proponent, maximizing its probative value and minimizing its prejudicial effect.' United States v. Brady, 595 F.2d 359, 361 (6th Cir.), cert. denied, 444 U.S. 862 (1977).
 
 
 15
 The government emphasized throughout the in limine hearing and at trial Huff's concern with his culpability, having previously been involved personally in an altercation during an arrest, and that this provided a motive for him to obtain surrogates to assault Gambel. There is no doubt, however, that this evidence was highly prejudicial, and that Huff, from the outset, recognized its harmful impact and sought to exclude it.
 
 
 16
 The government, as additional justification for its admission, argues that the testimony in dispute was brief and did not disclose any details of the underlying incident, and points out that the trial court gave a limiting instruction explaining the purported relevance of the prior acts as a part of its general jury instruction. See United States v. Davis, 707 F.2d 880, 884 (6th Cir. 1983).
 
 
 17
 We have stated the facts in this case giving favorable inferences to the government. The indictment charges of overt acts in furtherance of the conspiracy and in aiding and abetting an assault upon a prisoner by other prisoners, however, emphasized the roles of Douglas and Michael Wayne Bowlin rather than Huff's role in the unlawful activity:
 
 
 18
 1. On or about March 20, 1983, defendant HARVEY LEE DOUGLAS had a conversation with defendants JERRY EDWARD HUFF, MICHAEL WAYNE BOWLIN, and EDDIE WAYNE BRUMMETT in the Jellico City Jail, during which HARVEY LEE DOUGLAS suggested that Glenn Ervin Gambel be placed in a cell with him because Gambel had not fully cooperated with the officers during the arrest and booking procedures.
 
 
 19
 2. On or about March 20, 1983, defendants BRUMMETT and DOUGLAS instructed other inmates in the Jellico City Jail to pretend that they were asleep.
 
 
 20
 3. On or about March 20, 1983, DOUGLAS had a conversation with defendant TOMMY JOE BOWLIN in the Jellico City Jail, during which DOUGLAS and BOWLIN agreed to beat Gambel with the approval of defendants HUFF and MICHAEL WAYNE BOWLIN.
 
 
 21
 4. On or about March 20, 1983, defendant BRUMMETT placed defendant DOUGLAS in a cell with defendant BOWLIN after learning that defendants HUFF and BOWLIN were enroute back to Jellico City Jail with Gambel in their custody, having completed Gambel's blood test at Jellico Hospital.
 
 
 22
 5. HUFF and BRUMMETT placed Gambel in a cell with DOUGLAS and BOWLIN.
 
 
 23
 7. Defendants HUFF, BOWLIN and BRUMMETT knew defendants DOUGLAS and BOWLIN were beating and assaulting Gambel, and took no action to halt DOUGLAS and BOWLIN until the beating was completed.
 
 
 24
 8. HUFF supplied defendants DOUGLAS and BOWLIN with soft drinks to reward them for beating Gambel.
 
 
 25
 (Grand Jury Charges of overt acts, in pertinent part). The indictment charges indicated that it was not Huff who initially suggested putting Gambel in a cell with other inmates and that it was not necessarily Huff who implemented this suggestion of putting Douglas in a cell with Tommy Joe Bowlin. The indictment charges indicate that it was the plan and purpose of Huff (together with Michael Wayne Bowlin) to place Gambel in a cell with other prisoners to permit an assault and that Huff rewarded Douglas and Bowlin with soft drinks.
 
 
 26
 In emphasizing, as we have, the charges and the evidence taken in a light favorable to the government, we find that Huff's argument that there was insufficient evidence to convict him has no merit. At the same time we are persuaded that there was an abuse of discretion under the circumstances of this case in admitting evidence that Huff had been involved nine months earlier in a single incident involving 'physical force,' and discussed with police chief Barclay 'the possibility of a lawsuit' resulting therefrom. It would not be surprising that a police officer had, nine months previously, used physical force in an arrest,[4] but its potential for unfair prejudice in this case involving strongly conflicting evidence about involvement of a police officer in a jail cell assault by prisoners on a person charged with being intoxicated can hardly be overstated. Because of lapse of time and delay in bringing the indictment, conflict in evidence was complicated by witnesses' professed failure to remember the details of the episode.
 
 
 27
 The government attorney argued, after introduction of this evidence, that Huff was anticipating a 'possible lawsuit' and thus, somehow, this single experience formed a motive to use prisoners in an assault upon another recently arrested prisoner, described by the government attorney as 'a bit of a smartaleck . . . a little belligerent.' J/A at 39. The government attorney argued this proposition at least twice, the latter time claiming that fellow officer and defendant Bowlin agreed to the alleged conspiratorial scheme because he 'was working with Huff' and the latter had been engaged before in 'violence' on July 4 and that if they beat Gambel personally 'Jerry Huff was going to be even in more trouble.' J/A at 40. Not only did the government emphasize this past event, which was at least to some degree dissimilar to the criminal conduct involved in the indictment charge, but the codefendant's counsel also emphasized to the jury this factor of Huff's facing a potential civil suit. It is also noted that Michael Bowlin was acquitted on one of the charges despite testimony, if believed, that involved him substantially in the alleged criminal plan and conspiracy along with Huff.
 
 
 28
 We find abuse of discretion in admitting the evidence because the prejudicial effect of this testimony far outweighed its doubtful probative effect, even 'maximizing its probative value and minimizing its prejudicial effect.' See Brady, 595 F.2d at 361. The prior episode was dissimilar in that it did not involve criminal conduct, it did not happen in a jail, and it apparently involved a confrontation with an armed man sought to be taken into custody. It was separated from the conduct involved in this criminal trial by a substantial period of time and was the only such episode involving alleged use of excessive force mentioned with respect to Huff. This evidence was seized upon by the prosecutor and could not help but plant the seed that Huff was a police officer prone to violent conduct, and therefore a 'bad' person. The effect to limit its consideration 'as evidence of motive' as part of the court's general instructions to the jury, while commendable, was insufficient under all the circumstances to accomplish its purpose and to cure the unfair prejudice to appellant.
 
 
 29
 We touch upon another aspect of this case that is troubling to the court. We have no authority to remedy or rectify the alleged abuse of discretion on the part of the court in imposing a ten year sentence on Huff. Presumably the sentencing judge, having heard the proof and having considered the presentence report and information received at sentencing, will take into account appropriately the material factors, both favorable and unfavorable, to a defendant in arriving at a judgment imposing a penal sanction. Here the judge heard the proof concerning circumstances of this offense and the further information that Huff had no prior criminal offense record; supported his wife and family, including a young child; had a prior work record; had served commendably in the military in the Vietnam conflict; and was suffering from physical and financial problems at the time of sentencing. In view of our remand for a new trial, we assume the trial court will properly assess all these factors, including those that would tend to show a number of mitigating circumstances.
 
 
 30
 Accordingly, we REVERSE and REMAND for a new trial as to appellant Huff.
 
 
 
 *
 HONORABLE DAVID S. PORTER, United States District Court for the Southern District of Ohio, sitting by designation
 
 
 [1]
 Bowlin and Douglas were not normally housed in the same cell
 
 
 [2]
 While the testimony as to which officer struck Gambel was not altogether clear, the prosecutor argued to the jury that it was Bowlin and this was not denied
 
 
 [3]
 Rule 404(b) provides:
 Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show that he acted in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident.
 
 
 [4]
 The only other evidence in the joint appendix bearing on the circumstances of this episode was that Huff had not been involved in 'any other similar situations where prisoners were beaten,' and that a civil lawsuit did evolve charging use of excessives force on Huff's part in an incident where a man was shooting a shotgun in Jellico on the Fourth of July, and Huff claimed the man 'was fighting' and was 'very intoxicated.' J/A at 44-45 (proceedings during sentencing)