993 F.2d 1548
 NOTICE: Sixth Circuit Rule 24(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Sixth Circuit.
UNITED STATES of America, Plaintiff-Appellee,
v.
Dwayne Anthony JACKSON, Defendant-Appellant.
 No. 92-3248.
 United States Court of Appeals, Sixth Circuit.
 May 6, 1993.
 
 Before GUY and BOGGS, Circuit Judges, and GIBSON, Chief District Judge.*
 PER CURIAM.
 
 
 1
 Defendant, Dwayne Anthony Jackson, appeals his conviction for possession of cocaine with intent to distribute, and for aiding and abetting the possession of cocaine with intent to distribute. Jackson raises the following allegations of error: (1) the evidence adduced at trial was insufficient to sustain the verdict; (2) the district court failed to grant a judgment of acquittal in his favor; (3) the district court abused its discretion and deprived him of a fair trial by allowing police officer Kididis to testify as an expert witness; (4) the district court refused to instruct the jury that proof of a small amount of a controlled substance, standing alone, is an insufficient basis from which intent to distribute may be inferred; (5) the district court abused its discretion in admitting a prejudicial hearsay statement; (6) the district court allowed police officer Henson to offer expert testimony where the officer was not qualified as an expert witness; and (7) he was deprived of a fair trial when the prosecutor misstated the evidence during closing argument. We reverse.
 
 I.
 
 2
 On March 6, 1990, Officers Mark Henson and Arthur Smart of the Columbus, Ohio, Police Department were on patrol in the area of 838 Oak Street, a two-story apartment building containing six apartments. Around 2 a.m., the officers noticed activity that they believed indicated that a drug-selling operation was being run from somewhere inside the building. A number of individuals were seen going in and out of the building at that late hour. At trial, Henson testified that he had witnessed similar traffic for about a week prior to that evening.
 
 
 3
 At approximately 2:29 a.m., Henson and Smart parked their cruiser at the rear of the building and approached the rear door. They noticed that the door had been propped open with a wad of paper towels, and they heard "a commotion" coming from one of the upstairs apartments. The officers then entered the building to investigate. They went to the rear apartment on the second floor and listened outside the door for a brief time. The door was moving in and out as if someone was holding the door from the inside. Henson heard a voice, which he later stated was not defendant's, say "Give me all your money or I'm going to shoot you." He then heard a different voice say "Man, you've got all my money." Henson also heard defendant's voice coming from inside the apartment, but was unable to remember what he said, except that he spoke in a "demanding" tone.
 
 
 4
 At this point, Smart radioed for help. As the officers summoned by Smart started coming up the stairs, co-defendant Nathaniel White opened the apartment door, saw Henson, and tried to slam the door shut. Henson put his foot in the door to stop it from closing. When the police entered the room, Henson saw two individuals lying on the floor of the apartment and others running toward the north-side kitchen area. He believed that Nathaniel White had a sawed-off shotgun and that another individual whom he could not identify had a revolver. Soon afterwards, Henson, Smart, and Officers Jerry Peters, Tyrone Hollis, and Christine Roberts heard glass breaking though, at trial, their testimony differed as to exactly when they heard the breakage. Henson yelled that someone was attempting to exit through the kitchen window and Roberts and Peters later stated that they saw defendant in the air coming out of the window. According to Roberts, defendant hit the ground on all fours within one foot of a drain pipe. He was quickly apprehended and handcuffed by Roberts and Peters.
 
 
 5
 Henson ordered the remaining individuals in the apartment, White and Derrick Richardson, to come out into the living room and lie on their stomachs. Neither White nor Richardson had any money on them. Johnny Jackson (no relation to defendant), who was one of the individuals observed lying on the floor when the police first entered the apartment had a telephone beeper on his person. The other individual seen lying on the floor, Brian Williams, had $1,610 in his left jacket pocket. Neither Johnny Jackson nor Williams was in a position to throw anything out the window once the police arrived. Henson found a razor blade and 3.5 grams of crack cocaine on the television set in the livingroom. Later, Henson found two bags containing a total of 13.5 grams of crack cocaine outside the apartment beside a drain pipe under the kitchen window through which defendant had jumped.
 
 
 6
 Hollis found .93 grams of cocaine base and $1,255 in the kitchen sink. The sink was approximately fifteen feet from the broken kitchen window. Roberts found a box of .32 caliber shells on the top shelf of a closet. She also uncovered an unloaded .32 caliber revolver at the rear of 838 Oak Street, approximately five feet from where defendant was arrested.
 
 
 7
 Defendant was charged, along with Johnny Jackson, Richardson and White, in count four of a four-count indictment with possession of cocaine with intent to distribute, and aiding and abetting the possession of cocaine with the intent to distribute, in violation of 21 U.S.C. § 841(a)(1), § 841(b)(1)(B)(iii) and 18 U.S.C. § 2. On November 19, 1991, the district court granted Richardson's motion for acquittal and dismissal of all charges against him. On November 20, 1991, the jury found defendant and White guilty on count four of the indictment. Later, on April 2, 1992, the district court sua sponte dismissed White's conviction on count four on a finding of insufficient evidence to sustain the verdict.[1]
 
 II.
 
 8
 Jackson argues that the government did not demonstrate that he intended to distribute cocaine when, in his view, the evidence presented at trial merely showed his presence at a location where cocaine was found, as well as his proximity to the drugs.
 
 
 9
 In United States v. Tilton, 714 F.2d 642, 645-46 (6th Cir.1983), we set forth the test for reviewing the sufficiency of the evidence underlying a jury conviction:
 
 
 10
 A jury conviction must be sustained if there is substantial evidence on the record to support it. Glasser v. United States, 315 U.S. 60, 80, 62 S.Ct. 457, 469, 86 L.Ed. 680 (1942). In making this determination, an appellate court must view all of the evidence in the light most favorable to the government, resolve all inferences which may reasonably be drawn from the evidence in the government's favor and resolve all conflicts in the testimony in the same way. United States v. Wolfenbarger, 426 F.2d 992 (6th Cir.1970). If, under such a review, there is sufficient competent evidence on the record to justify a rational juror's conclusion that every element of the offense has been established beyond a reasonable doubt, the conviction must be affirmed. Jackson v. Virginia, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560, reh'g denied, 444 U.S. 890, 100 S.Ct. 195, 62 L.Ed.2d 126 (1979).
 
 
 11
 Circumstantial evidence, standing alone, may be sufficient to sustain a conviction so long as the totality of evidence is substantial enough to establish guilt beyond a reasonable doubt. See United States v. Green, 548 F.2d 1261, 1266 (6th Cir.1977); United States v. Conti, 339 F.2d 10 (6th Cir.1964).
 
 
 12
 We are convinced, however, that on the basis of the evidence presented no reasonable jury could find that Jackson intended to distribute the cocaine attributed to him at trial.
 
 
 13
 At trial, the government suggested that Johnny Jackson and Brian Williams were operating a crack house at 838 Oak Street, citing the presence of drugs, weapons, a telephone beeper, a razor blade that could be used to cut cocaine, and large amounts of money in the apartment, and noting the substantial amount of foot traffic in and out of the building. The government contended that Richardson, White, and defendant were in the process of robbing Johnny Jackson and Williams at the time the police entered the premises. This contention was supported by Officer Henson's testimony that he heard someone say "Give me all your money or I'm going to shoot you." Henson also stated that he heard defendant speak in a "demanding" tone, though he could not recall what defendant actually said. Furthermore, both Johnny Jackson and Williams were discovered by the police lying on the floor, as if they had been forced to do so.
 
 
 14
 An expert witness for the prosecution, Detective Michael Kididis of the Columbus Police Department, testified that the cocaine found near Dwayne Jackson when he was apprehended and that found in the kitchen sink was worth well over $1,000. Consequently, the jury had before it evidence that the cocaine was one of the objects of an apparent robbery.
 
 
 15
 The government, however, offered virtually no evidence that Jackson intended to distribute this cocaine. It pointed out that no paraphernalia related to consumption was discovered on Jackson's person or on the premises. This proves little; Jackson could hardly be expected to bring such paraphernalia to the scene of a robbery. The government mainly relied on the quantity of the cocaine attributed to Jackson in order to show the intent to distribute on his part. However, there was no evidence to support a conclusion that the purpose of the robbery was to obtain drugs. Further, there was no evidence that Jackson would have had any idea how much cocaine was present even if it was assumed that securing drugs was one purpose of the robbery.
 
 
 16
 The quantity of the narcotics possessed by a defendant, standing alone, can provide a sufficient basis from which to infer the intent to distribute under 21 U.S.C. § 841. See, e.g., Rodriguez v. United States, 585 F.2d 1234, 1246 (5th Cir.1978), aff'd, 450 U.S. 333 (1981). However, even if Jackson could be said to have possessed the 13.5 grams of crack cocaine found near the drain pipe and the .93 grams of cocaine base found in the kitchen sink, approximately 14.5 grams of cocaine is not a sufficient quantity to establish intent to distribute beyond a reasonable doubt under these circumstances. See Turner v. United States, 396 U.S. 398, 423 (1970) (holding that possession of 14.68 grams of a cocaine mixture, without other evidence, was an insufficient predicate for concluding that defendant was distributing).
 
 
 17
 If there was evidence indicating that Jackson planned to distribute illicit narcotics, possession of as small a quantity as four or five grams of cocaine might have been sufficient to prove he intended to distribute such cocaine. See United States v. Ramirez, 608 F.2d 1261, 1264 (9th Cir.1979). Here, the government put forward no evidence that the apparent robbery at 838 Oak Street was to obtain narcotics that would be later sold to others. Accordingly, despite viewing the evidence in the light most favorable to the government, we must reverse Jackson's conviction. In light of our holding, we need not address the other issues raised by his appeal.
 
 
 18
 REVERSED.
 
 
 
 *
 The Honorable Benjamin F. Gibson, United States District Court for the Western District of Michigan, sitting by designation
 
 
 [1]
 At the time of trial, Johnny Jackson remained at large